# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No.  98-2717

_____

MELANIE J. HUTCHINS,               *
                                   *
        Appellant,                 *
                                   * Appeal from the United States
        v.                         * District Court for the Southern
                                   * District of Iowa Central Division
INTERNATIONAL BROTHERHOOD          *
OF TEAMSTERS,                      *
                                   *
        Appellee.                  *

_____

Submitted: April 23, 1999
Filed:     June 17, 1999

_____

Before  WOLLMAN[1] and LOKEN, Circuit Judges, and  JACKSON[2], District Judge.

JACKSON, District Judge.

_____

[1]The Hon. Roger L. Wollman became Chief Judge of this Court on April 24, 1999.

[2]The Hon. Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation.

Melanie J. Hutchins appeals from the district court's[3] order denying her motion for summary judgment and granting the motion of her former employer International Brotherhood of Teamsters for summary judgment in her action alleging sex discrimination and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and sex discrimination under the Equal Pay Act of 1963, 29 U.S.C. § 206(d).[4]  For  the following reasons, we affirm.

## I.

Hutchins began working as an international organizer for the International Brotherhood of Teamsters (IBT) on March 1, 1993.  She came to the job after having spent 14 years working as the office manager for Teamsters Local 387.  As office manager, Hutchins' duties included negotiating, investigating grievances, drafting and interpreting contracts, billing, creating and distributing union literature, and assisting in developing campaign strategy.  During her tenure as office manager, Hutchins participated in five organizing campaigns, each of which lasted an average of three months.  Hutchins had also served as a steward for the local union, and she had held the position of lead organizer which involved communicating with employees and business agents about union matters and helping to oversee elections.

---

[3] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[4] The district court also dismissed Hutchins' state-law based promissory estoppel claim without prejudice so that she could assert it in state court.  Hutchins does not appeal this dismissal.

Hutchins was offered the international organizer job by Vicki Saporta who was then the IBT's director of organizing. Saporta told Hutchins that her starting salary would be $35,000 per year and that she would receive a $5,000 pay increase every six months until her annual salary reached $55,000. The annual starting salaries for organizers hired after February 1992 ranged from $35,000 to $55,000. During the period February 1992 to October 1993, there were eight male organizers hired at a starting salary of $35,000; thirteen male organizers hired at a starting salary between $40,000 and $55,000; and five female organizers hired at a starting salary between $45,000 and $55,000.

When Hutchins began working for the IBT, its organizing department was divided into four regional "conferences." Assigned to each conference was a coordinator who had supervisory authority over the organizers within that conference. Hutchins worked under the direct supervision of Jerry Schmidt, the central conference coordinator.

Saporta resigned from the position of director of organizing, and Robert Muehlenkamp was appointed to succeed her on August 3, 1993. Shortly thereafter, Muehlenkamp learned of Saporta's practice of granting automatic pay increases to organizers every six months and decided that the system for awarding pay increases should be evaluated. In October 1993, Muehlenkamp directed the four conference coordinators to complete evaluations of the organizers they supervised and to report the results of the evaluations to him. The evaluation process required the completion of a self-evaluation by the organizers and review by the coordinators. Muehlenkamp decided that pay increases would be given to international organizers who had been

employed for six months prior to August 3, 1993 without having received an increase and who had received favorable evaluations from their conference coordinators. Increases for organizers who passed the six-month threshold after August 3, 1993 and all subsequent salary increases were to be deferred until Muehlenkamp's review of the salary system was completed in February 1994. All such increases were to be determined primarily on the basis of performance.

In late 1993, Hutchins completed a self-evaluation and reviewed it with her conference coordinator, Jerry Schmidt. In a letter to Muehlenkamp dated November 28, 1993 Schmidt wrote:

> Melanie [Hutchins] has the least experience of anyone on the staff. She is assigned to an area where she has not been well accepted. This has made it difficult for her to get the experience needed. I am told this is beginning to change. This could be the cause for some of the negative attitude.
>
> More than anyone on the staff I need to get out in the field with Melanie. I also think she needs to get on a good campaign with a more experienced organizer.
>
> Melanie should be raised to the next progression accordingly. It is understood this is to be retroactive.

Muehlenkamp decided that Hutchins' performance did not merit a salary increase and he wrote the word "hold" at the bottom of the letter.

Hutchins states that she spoke with Schmidt in February 1994 after she learned that two of her fellow male organizers had been awarded raises. According to Hutchins, Schmidt stated that the omission of her raise was merely an oversight. When

Hutchins did not receive a raise in March 1994, she again talked to Schmidt who then informed her that Muehlenkamp had "pulled" her raise. On April 4, 1994 Schmidt told Hutchins that the decision to deny her a raise was final. Hutchins submitted her resignation that same day.

On January 20, 1995 Hutchins filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In her charge, Hutchins claimed that she had received a lower salary than her male counterparts and that she had been denied pay increases on the basis of her sex. Hutchins also completed and submitted to the EEOC a "Charging Party Discharge Questionnaire" in which she reported that she had quit her job.

In January 1996 Hutchins filed this action claiming that the IBT discriminated against her on the basis of sex by paying her a lower salary than that paid to male employees doing equal work and by denying her salary increases that were given to male employees, in violation of Title VII and the Equal Pay Act. Hutchins also claimed that the IBT's refusal to correct the unlawful pay disparity created an "intolerable and hostile work environment" which forced her to resign. The parties filed cross motions for summary judgment. The district court found that Hutchins had established a prima facie case with respect to her claims under the Equal Pay Act. However, the court further found that the starting salary differentials and the denial of salary increases to Hutchins were based on factors other than sex. Thus, the court concluded that the IBT was entitled to judgment as a matter of law on the Equal Pay Act claims. Because the Title VII claims were treated as "coextensive" with the Equal Pay Act claims, the court granted summary judgment in favor of the IBT on the Title VII claims as well. In

dismissing the constructive discharge claim, the district court ruled that Hutchins had failed to exhaust administrative remedies under Title VII because she did not mention constructive discharge in her Charge of Discrimination. The court further ruled that Hutchins could not maintain a constructive discharge claim under the Equal Pay Act because she had not alleged retaliation. This appeal followed.

## II.

We review de novo a grant of summary judgment, using the same standards used by the district court. See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). The question before us is the same as that before the district court: whether "the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).

The standard governing a claim of unequal pay for equal work is the same for Title VII and for the Equal Pay Act. See Kindred v. Northome/Industrial School Dist. No. 363, 154 F.3d 801, 803 (8th Cir. 1998), cert. denied, ___ U.S. ___, 119 S. Ct. 881, 142 L.Ed.2d 781 (1999); McKee v. Bi-State Development Agency, 801 F.2d 1014, 1019 (8th Cir. 1986). To establish a prima facie case of sex-based pay discrimination, Hutchins was required to prove that the IBT paid male employees higher salaries than it paid her for jobs "requir[ing] equal skill, effort and responsibility, and which are performed under similar working conditions." EEOC v. Delight Wholesale Co., 973 F.2d 664, 669 (8th Cir. 1992) (citation and internal quotation omitted). See also 29 U.S.C. § 206(d)(1). In the instant case, the district court found that Hutchins had met her burden of establishing a prima facie case of unequal pay with

respect to both the starting salary and pay raise claims. The burden then shifted to the IBT to prove that the disparities complained of were based on either (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality; or (4) a factor other than sex. 29 U.S.C. § 206(d)(1); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 513 (8th Cir. 1995).

## A. Starting Salary

The undisputed evidence revealed that the IBT hired male and female organizers at a starting salary of $35,000 and that it also hired male and female organizers at higher starting salaries. The district court focused on twelve male organizers whose starting salaries were higher than $35,000 and whom Hutchins had selected for comparison in support of her equal pay claim. The IBT conceded that Hutchins' job duties and responsibilities were the same as that of the twelve male comparators.[5] The district court found that Hutchins had made out a prima facie case of pay discrimination with respect to the twelve comparators.

A prima facie case of pay discrimination is established by proof that the employer paid "workers of one sex more than workers of the opposite sex for equal work." Corning Glass Works v. Brennan, 417 U.S. 188, 196 (1974). As discussed above, Hutchins' starting salary was the same as that of eight male organizers and there were five female organizers who were paid higher starting salaries. Although Hutchins

---

[5] Hutchins identified thirteen male organizers, only one of which (Douglas J. Webber) was contested by the IBT. The district court agreed with the IBT that Webber was not an appropriate comparator because of the uniqueness of his duties and responsibilities as an organizer.

identified twelve male organizers who received higher starting salaries, we have cautioned that comparisons with "specifically chosen employee[s] should be scrutinized closely to determine [their] usefulness." Heymann v. Tetra Plastics Corp., 640 F.2d 115, 122 (8th Cir. 1981). Hutchins offers no rationale for asking the court to focus only on the twelve male employees she selected and disregard the eight male organizers whose starting salaries were the same as hers.

Nevertheless, we cannot say that the district court erred in finding that Hutchins established a prima facie case of pay discrimination. Further, we agree with the district court that the IBT sustained its burden of proving that the difference between the starting salaries paid to Hutchins and to the twelve male comparators she selected was based on factors other than sex. The IBT asserts that the differences in starting salaries are attributable to each individual's relevant experience, education and salary history. A differential that is based on education or experience is a factor other than sex recognized by the Equal Pay Act. Glenn v. General Motors Corp., 814 F.2d 1567, 1571 (11th Cir.), cert. denied, 488 U.S. 948 (1988); Strecker v. Grand Forks County Social Services Board, 640 F.2d 96, 100-01 (8th Cir. 1980). The evidence establishes that, as compared to Hutchins, each of the male comparators possessed one or more of the following qualifications at the time he was hired: more experience in organizing; more formal education, particularly in the area of labor and employment; more union experience; and union experience at higher levels. In addition, the evidence establishes that the male organizers who, like Hutchins, received a starting salary of $35,000 did not possess qualifications equivalent to those of the higher-paid male organizers.

Hutchins does not contest the evidence of the male comparators' qualifications nor does she contend that experience, education and salary history are not legitimate, nondiscriminatory factors that can be considered in formulating pay decisions. Her complaint is that the IBT should have been required to prove that it actually considered these factors in deciding the starting salaries to be paid to organizers. Contrary to Hutchins' assertion, however, the IBT did prove this through the deposition and declaration of Robert Muehlenkamp.[6] Under Rule 56, the party moving for summary judgment may show by affidavit, depositions or pleadings that there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c). Hutchins does not contend that the witness gave false testimony or that the IBT submitted the sworn statements in bad faith.

Because the IBT met its burden of proof that differentials in the starting salaries paid to organizers like Hutchins were based on factors other than sex, the IBT was entitled to judgment as a matter of law.

### B. Salary Increases

Hutchins next asserts that she was discriminatorily denied salary increases because of her sex. It is undisputed that at the time she was hired Hutchins was told by Saporta that she would automatically receive salary increases of $5,000 every six months until her annual salary reached $55,000. However, during the initial six-month

---

[6] According to Muehlenkamp, the salaries paid to international organizers were based primarily on their experience in the labor field and consideration was also given to factors such as education and salary history.

period of Hutchins' employment, Muehlenkamp replaced Saporta and adopted a transitional policy with respect to pay raises . Under that policy, any organizer who had not worked for six months by August 3, 1993 or who had received an unfavorable evaluation would not be given a salary increase. Length of service is a factor other than sex upon which an employer may base decisions regarding pay increases. See Riordan v. Kempiners, 831 F.2d 690, 699-700 (7th Cir. 1987). Hutchins had worked for only five months by August 3, 1993 and she had been given an unfavorable evaluation by her immediate supervisor Schmidt. Consequently, she did not receive a salary increase. There is no evidence that salary increases were awarded to male organizers who fell into the same category as Hutchins or that the transitional policy was applied in any other discriminatory manner. As such, the IBT was entitled to judgment.

## C. Constructive Discharge

Hutchins claims that she was forced to quit her job as a result of the IBT's refusal to rectify the pay disparity. To establish a claim of constructive discharge under Title VII, a plaintiff must show more than just a violation of the statute. Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998). Rather, "[a] constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit." Johnson v. Runyon, 137 F. 3d 1081, 1083 (8th Cir.) (internal quotations omitted), cert. denied, 119 S. Ct. 264 (1998). Under the Equal Pay Act an employee may recover for an actual or constructive discharge only when it is in retaliation for the employee's filing of a complaint or participating in other proceedings under the Act. 29 U.S.C. § 215(a)(3).

The district court dismissed Hutchins' constructive discharge claim, in part because she failed to include it in her EEOC charge. We need not decide whether the district court was correct in doing so. Hutchins presented no evidence of working conditions that were so intolerable as to compel her to resign. Thus, her constructive discharge claim fails under Title VII. Further, we agree with the district court that because Hutchins did not allege retaliation, she could not maintain a claim of constructive discharge under the Equal Pay Act.

## III.

For the foregoing reasons, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT