# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2320

_____

| | |
|---|---|
| Renee Sowell, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the |
| Alumina Ceramics, Inc., an Arkansas | * Eastern District of Arkansas. |
| Corporation; a subsidiary of CoorsTek, | * |
| Inc., a Colorado Corporation, | * |
| | * |
| Appellee. | * |

_____

Submitted: February 14, 2001

Filed: June 1, 2001

_____

Before WOLLMAN, Chief Judge, BOWMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Renee Sowell appeals the adverse grant of summary judgment in her Title VII sex discrimination suit against her former employer, Alumina Ceramics, Inc. See 42 U.S.C. § 2000e to e-17 (1994 & Supp. IV 1998). She alleges that material facts remain in dispute regarding her claims against Alumina for sexual harassment, gender-based wage discrimination, retaliation, and constructive discharge. We affirm.

Renee Sowell began working at Alumina in 1989. Through participation in the company's apprenticeship program, Sowell became a certified tool maker and worked in Alumina's tool room. She was the only female tool maker employed in the tool room throughout the time period at issue.

During her employment in the tool room, Sowell's immediate supervisor was Hugh Richardson. While working under Richardson, Sowell performed extra duties that included job scheduling, writing orders, completing time cards, preparing budgets, generating tool set production costs, and assisting coworkers with their work. She received additional pay for these duties only when Richardson was absent.

As a tool maker, Sowell earned the same pay as one other male tool maker until late 1996. After 1996, she earned pay equal to two male tool makers and less than two other male tool makers. The tool makers earning more than Sowell had only recently been hired; Alumina cited market-related reasons for its decision to pay them more than the other tool room employees.

Throughout her employment in the tool room, Sowell alleges she experienced an atmosphere rife with sexually and racially-charged jokes, written materials, and pictures. She frequently complained to Richardson about these materials. During the last stage of her employment at Alumina, Steve Louks was the manager overseeing Richardson and the tool room operations. Sowell also was subjected to inappropriate behavior at the hands of Louks. In October 1996, she complained about Louks's behavior to officials from Alumina's local and Colorado human resources offices. She alleged that Louks had made inappropriate comments to her, such as asking if he could see her tan lines, suggesting that she had engaged in sexual activity with Richardson on a business trip, and telling her she should do her "woman's work" by mopping the

tool room floor. An investigation ensued, and in November 1996 Louks received a written reprimand for his behavior toward Sowell.

In the spring of 1997, tool room employees were told that they would be required to work ten-hour work days and Saturdays because of an increased work load. Sowell, who was pregnant at the time, received permission from her doctor to be excused from those requirements.

Beginning in March 1997, Sowell took twelve weeks of maternity leave for the birth of her child. She returned to work on June 9, 1997. On that day, two events occurred that displeased Sowell. First, she observed some of her coworkers in the tool room gathered around a desk and laughing. She did not see what the workers were viewing, nor was she told by any of them of the contents of the material on the desk. Second, Richardson advised her of a new policy, suggested by Louks, that tool room employees wear pagers at night and on weekends in order to be available for emergency tool repairs. The next day Sowell submitted her resignation letter. Approximately two weeks later, Sowell inquired of Alumina's human resources office regarding an open engineering position. The human resources official informed Sowell that the position had been filled, when in fact it had been withdrawn.

Sowell filed a discrimination charge with the EEOC on December 5, 1997. The EEOC issued a right-to-sue letter, and Sowell sued Alumina in the District Court.[1] The court granted summary judgment to Alumina on all claims. Sowell appeals.

---

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

II.

We review de novo a district court's grant of summary judgment. Smith v. St. Louis Univ., 109 F.3d 1261, 1264 (8th Cir. 1997). "To avoid summary judgment, the non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 718 (8th Cir. 2000), cert. denied, 121 S. Ct. 773 (2001).

Sowell argues that the District Court erred by granting summary judgment on her Title VII sexual harassment claim. To prevail on this claim, Sowell must establish, among other requirements, that unwelcome harassment occurred. Austin v. Minn. Mining & Mfg. Co., 193 F.3d 992, 994 (8th Cir. 1999). The incident of unwelcome harassment must have occurred within the 180 days preceding the plaintiff's filing of her EEOC claim. 42 U.S.C. § 2000e-5(e)(1) (requiring that an aggrieved party file a claim with the EEOC within 180 days after the "alleged unlawful employment practice occurred").

The District Court granted summary judgment to Alumina because it found that no actionable instance of harassment occurred during the statutory period, and therefore Sowell could not use the continuing-violation theory to bring in alleged Title VII violations outside the 180-day period to prove her claim. The continuing-violation theory allows a court to consider allegedly discriminatory acts that occurred prior to the 180-day statute of limitations period where those acts are part of a continuing pattern of discrimination and where a present violation exists. Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1302-03 (8th Cir. 1997), cert. denied, 524 U.S. 953 (1998).

The District Court appropriately granted summary judgment to Alumina on Sowell's sexual harassment claim. To state a valid claim Sowell must allege, at a minimum, one incident within the 180-day period that, on its own merits, constitutes

"unwelcome harassment."  See Austin, 193 F.3d at 994.  Only two days of Sowell's employment by Alumina fall within the 180-day period:  June 9 and June 10, 1997.  On June 9, Sowell alleged that she saw the men in the tool room gathered around Richardson's desk, looking at something and laughing.  She did not view the material on the desk and she was not told of its contents.  Cf. Carter v. Chrysler Corp., 173 F.3d 693, 701 n.7 (8th Cir. 1999) (holding that plaintiff's knowledge of offensive graffiti, gained through hearsay, was relevant to whether hostile work environment existed and whether plaintiff reasonably perceived other conduct to be abusive or hostile).  Sowell's allegation that she "knew" her coworkers were viewing offensive materials relies entirely upon her interpretation of the event in light of experiences she endured outside the 180-day time period.  This episode is not evidence that demonstrates she was exposed to offensive material or otherwise harassed within the 180-day period.  Because this incident does not rise to the level of actionable harassment, it cannot trigger the continuing-violation theory.  Inasmuch as all the other harassing behavior alleged by Sowell occurred prior to the running of the 180-day statutory period, we hold that she has failed to make a sufficient showing on the essential elements of her sexual-harassment claim.  We affirm the District Court's grant of summary judgment on this claim.

III.

Sowell next argues that the District Court should not have granted summary judgment on her wage-discrimination claim.  A successful gender-based wage discrimination claim under Title VII requires the plaintiff to prove that her employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (Equal Pay Act); see also EEOC v. Delight Wholesale Co., 973 F.2d 664, 669 (8th Cir. 1992) (holding that same standard applies to Equal Pay Act and Title VII wage-discrimination claims).  Once the plaintiff has proven her prima facie

case, the employer then bears the burden of coming forward with a legitimate nondiscriminatory factor upon which it based the wages paid. See 29 U.S.C. § 206(d)(1) (1994); Hutchins v. Int'l Broth. of Teamsters, 177 F.3d 1076, 1080-81 (8th Cir. 1999).

Sowell claims that Alumina required her to perform additional duties that represented part of the job functions of a lead[2] and that were not required of the other tool makers in the tool room. She asserts that she was neither paid as a lead nor given the appropriate job title, and she argues that she was paid less than, or the same as, all the other tool makers in the tool room despite her performance of these additional duties.

The District Court credited Alumina's defense that it had legitimate market-based reasons for paying the new hires in the tool room more than it paid Sowell and the other tool makers. The court also rejected Sowell's wage-discrimination argument regarding her performance of lead duties. The court analyzed this claim under a failure-to-promote theory, and held that Sowell's claim failed for two reasons. First, it concluded that she never applied for any lead position within the company, as is required in a failure-to-promote claim under Title VII. See Austin, 193 F.3d at 995. Second, it found that her claim was time-barred by the 180-day rule. We affirm the grant of summary judgment on this claim, but for reasons different from those of the District Court.[3]

_____

[2]At Alumina, a lead is a position immediately below the supervisor that receives additional compensation for performing some supervisory duties.

[3]The record indicates that Sowell received her last paycheck within the 180-day statutory period. Her claim is therefore not time-barred; rather, her damages—if any—would be appropriately limited to those accruing within the statutory period. See Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 168 (8th Cir. 1995) (en banc) (holding that each paycheck that pays a woman less than a similarly situated man is a wrong actionable under Title VII, but allowing relief only for the discriminatory pay

Sowell's claim for lead pay fails because she has not established that Alumina paid any other employee differently for performing a job of "equal skill, effort and responsibility" to her own. The record lacks specific evidence regarding the similarities between Sowell's work and that of other employees in lead positions at Alumina. She puts forward nothing more than conclusory allegations on this point, which are not sufficient to create a genuine issue of fact to survive summary judgment. Cf. Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995).

Finally, Sowell's wage discrimination claim regarding the discrepancy between her pay and that of her tool-room coworkers also fails. The evidence establishes that throughout her employment in the tool room she was paid the same as, or more than, at least some male tool makers in the tool room. Such was the case even after Alumina hired two new employees who were paid more than all the other tool room employees. In any event, Alumina asserts in its defense that it had to pay higher wages to these newly hired tool makers because of job market demands. Thus, Sowell has not produced evidence sufficient to satisfy the elements of a prima facie Title VII case of gender-based wage discrimination. We affirm the grant of summary judgment on this claim.

IV.

Sowell next argues that Alumina retaliated against her in response to the harassment complaint she lodged against Louks. "To establish a prima facie case of Title VII retaliation, [the plaintiff] must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection [existed] between her protected activity and the adverse employment action." Bogren v. Minnesota, 236 F.3d 399, 407 (8th Cir. 2000).

----

received within the limitations period).

Sowell engaged in protected activity when she complained to human resources about Louks's behavior toward her. Sowell cites three allegedly adverse employment actions later taken by Alumina against her. She claims that both the ten-hour-day-plus-Saturday policy and the on-call pager policy were targeted against her and were intended to serve as retaliation for her complaint about Louks's conduct. Sowell also asserts that Alumina retaliated against her when a human resources employee told her that an open engineering position Sowell had called to inquire about two weeks after she resigned had been filled. We hold that her proof that she suffered an adverse employment action fails as a matter of law.

Adverse employment actions must have a "materially adverse impact" on the plaintiff's terms or conditions of employment under Title VII. Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998). Certain employment actions cannot be characterized as adverse. Such actions include changes in the terms, duties, or working conditions that cause no materially significant disadvantage to the employee; an employer's demand, which was later withdrawn with no impact on employee's continued employment, that an employee take a drug test; or disappointment with changes in one's employment situation. See Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000); Thomas v. St. Luke's Health Sys., Inc., 869 F. Supp. 1413, 1435 (N.D. Iowa 1994), aff'd, 61 F.3d 908 (8th Cir. 1995) (table); Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994).

The District Court correctly held that because the work policies Sowell complains of were never put into practice against her, she did not suffer an adverse employment action. Cf. Thomas, 869 F. Supp. at 1435. Alumina did not single out Sowell and impose the new ten-hour day and pager requirements solely upon her. The policies applied to all tool room employees, male and female. Furthermore, Sowell was never required to comply with either of these policies. She received a medical exemption from the first, and she resigned before the second took effect. Thus, her

dislike of these policies cannot translate into an actionable claim on her employment conditions.

Moreover, Sowell's evidence fails to establish any causal connection between the misinformation provided to her by human resources and the complaints of discrimination she made against Louks. Sowell argues that she proved causation: the temporal proximity between her resignation and the "lie" (approximately two weeks) and the bare fact that the company misled her are, she asserts, sufficient evidence of causation. The relevant protected activity was, however, her complaint in October 1996, not her resignation in June 1997. See Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999) ("Conduct is only protected . . . if it qualifies as participation 'in any manner' in a Title VII 'investigation, proceeding, or hearing.'") (quoting 42 U.S.C. § 2000e-3(a)). Sowell must establish "more than a temporal connection between [her] protected activity and an adverse employment action" in order to create a "genuine factual issue on retaliation." Buettner, 216 F.3d at 716. Moreover, the seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally—and therefore causally—related. See Nelson v. J.C. Penney Co., 75 F.3d 343, 346-47 (8th Cir.) (holding that plaintiff fired one month after he filed age-discrimination charge failed to establish causal link without more evidence than temporal proximity), cert. denied, 519 U.S. 813 (1996). We affirm the judgment on Sowell's Title VII retaliation claim.

V.

Finally, Sowell asserts that Alumina constructively discharged her in June 1997. Under Title VII, "[a] constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit." Johnson v. Runyon, 137 F.3d 1081, 1083 (8th Cir.) (per curiam) (internal quotations omitted), cert. denied, 525 U.S. 916 (1998). A successful claim requires more than simply showing that an employer's actions have violated Title VII. Hutchins, 177 F.3d at 1082. The

employee's decision to resign must be reasonable in light of the circumstances; we have stressed that "[t]o act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." Coffman, 141 F.3d at 1247 (quoting Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996)).  The employee must allow the "employer a reasonable opportunity to work out a problem."  Id.

Like the District Court, we conclude that summary judgment must be granted on Sowell's constructive-discharge claim.  As we previously held, no actionable instance of sexual harassment occurred during the time period relevant to this claim.  Furthermore, Sowell's retaliation claim fails for lack of proof.  Thus, the only action relevant to Sowell's constructive-discharge claim was the announcement of the pager policy.  That evidence is insufficient to sustain her claim for two reasons.  First, like the ten-hour day policy, Sowell never had to comply with the pager policy at all, and evidence suggests that it was never put into practice.  Second, Sowell quit without giving Alumina a reasonable chance to work out the alleged problem.  Sowell stated that she could not comply with the policy because of her need to care for her newborn infant.  Sowell complained to Richardson on June 9 regarding the policy, but she took no further steps to exempt herself from its requirements, such as getting a note from her doctor regarding her infant's needs or approaching human resources about the policy itself or about flexible work arrangements.  Sowell failed to avail herself of the channels of communication provided by Alumina to deal with such complaints.  See Coffman, 141 F.3d at 1247-48 (reversing constructive-discharge judgment in part because employee had avenue of redress within company and failed to use it).

## VI.

Finding no disputed issues of material fact, we affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.