# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1497

_____

Paulette Price; Wendy O'Neil;     *
Mary Dee Miller; Helen Goebel,     *
    *
       Appellants,     *
    *
    v.     *
    *   Appeal from the United States
Northern States Power Company,     *   District Court for the
    *   District of Minnesota.
       Appellee.     *
_____     *
    *
Equal Employment Opportunity     *
Commission,     *
    *
       Amicus on Behalf of     *
       Appellants.     *

_____

Submitted: October 18, 2011
Filed: December 22, 2011

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Four women employed by Northern States Power Company (NSP) brought this action alleging discriminatory pay practices under the Equal Pay Act (EPA), the

Minnesota Human Rights Act (MHRA), and Title VII of the Civil Rights Act of 1964. The district court[1] granted summary judgment in favor of NSP after concluding that the women had not established a prima facie case of wage discrimination. The women appeal, arguing that they did establish a prima facie case and that genuine issues of material fact remain on NSP's affirmative defenses. We affirm.

I.

EPA claims are generally subject to a two year statute of limitations, 29 U.S.C. § 255(a), and here the statutory period began in July 22, 2007 and extended to July 22, 2009.[2] The parties agree that evidence from before the statutory period may have relevance to EPA issues in some cases. Appellants contend that in this case a previous manager, Wayne Stifter, made pay related decisions and false statements about NSP's performance evaluation system before July 22, 2007 which contributed to subsequent pay disparities between men and women. NSP responds that the appellants have offered no evidence from any period which shows that it discriminated against its employees on the basis of sex.

Three of the appellants, Paulette Price, Wendy O'Neil, and Mary Dee Miller, as well as fifteen male employees currently work as field representatives at NSP's Chestnut Service Center in the Twin Cities area. Price began working for NSP in 1987. O'Neil and Miller joined the company in 1990. All three women became NSP field representatives in 1998. Field representatives at the Chestnut Service Center were supervised by Wayne Stifter before 2007, Kelly Bergeron from 2007 to 2008, and Ben Hasselblad from 2008 to the present.

---

[1]The Honorable Donovan H. Frank, United States District Judge for the District of Minnesota.

[2]On September 1, 2009 a new collective bargaining agreement went into effect that provided pay and wage increases for all field representatives.

The fourth appellant, Helen Goebel, and two men currently work as field representatives at NSP's St. Cloud Service Center. Goebel began working for NSP in 1982 and became a field representative in 1997. Field representatives at the St. Cloud Service Center were supervised by Wayne Stifter before 2006, Mary Preusser from 2006 to 2008, and Karen Jones from 2008 to the present. Field representatives do not transfer between the St. Cloud and Chestnut Service Centers.

The duties of field representatives generally include collecting amounts owed by delinquent customers and disconnecting utilities of customers who cannot pay. At the Chestnut Service Center field representatives also reconnect a customer's power when appropriate, a duty that field representatives at the St. Cloud Service Center do not undertake. Several field representatives at both the Chestnut and St. Cloud Service Centers who have additional training perform investigations into billing, meter, and rate issues. Goebel as well as the two men working as field representatives at the St. Cloud Service Center perform such investigations. Some men at the Chestnut Service Center also perform investigations, but Price, O'Neil, and Miller have never been trained in inspections although they state that they requested such training.

The company used a "red circling" policy when determining the starting pay of field representatives. Under this policy employees kept their base pay from their previous jobs at NSP when they started as field representatives. Field representatives thus began with varying compensation.

Before 2009, base pay increases for field representatives were determined by a performance evaluation system known as "Individual Performance and Development" or IPAD. The IPAD review process required a supervisor to compile observations about each employee into a written performance evaluation on a semi annual basis. The IPAD generated an overall numerical rating for each employee which ranged from 1 to 5. According to NSP, IPAD ratings for field representatives

rested on a number of factors. These included dollars collected, the number of disconnects and reconnects, attendance, customer complaints, and safety violations as well as initiative, teamwork, willingness to volunteer for less desirable assignments, attitude, and efficiency.

Each annual IPAD rating was finalized early the following year. NSP provided supervisors with a "compensation planning tool" which included a percentage range in annual wage increase that corresponded to each IPAD rating. For example in 2008, an IPAD rating of "3" corresponded to a salary increase of 0% to 3.75% while an IPAD rating of "4" corresponded to a range of 0% to 5%. Supervisors stated that they used their "informed business judgment" to recommend a percentage raise to award an employee in a given year. Final compensation decisions were reviewed by a director at NSP, but supervisors stated that they could not recall a time when an employee's recommended raise had been changed.

At or around the time when Price and Miller began working as field representatives, they had the same base compensation as two men working as field representatives at the Chestnut Service Center, a higher base salary than four men, and a lower base salary than three men. At or around the time when O'Neil began working as a field representative, her salary was higher than six men working as field representatives at the Chestnut Service Center and less than three men. Several men became field representatives at the Chestnut facility after Price, O'Neil, and Miller had already started the job or transferred to the job under individual circumstances. Five of them were red circled into the position at a higher base salary than the women, and one was red circled at a lower base salary.

The record shows that in 2008 Price and four men working as field representatives at the Chestnut Service Center received an IPAD rating of 3. Miller and O'Neil both received an IPAD rating of 4 in 2008, as did five men at the Chestnut Service Center. Price received a 3.3% raise that year, which was more than two men

-4-

who had received the same rating and less than two men with the same rating at the Chestnut Service Center. Miller and one other man who had an IPAD rating of 4 were awarded a 5% raise, and O'Neil was awarded the next highest raise of 4.9%. The other men who had received an IPAD rating of 4 that year were given lower raises. In 2009 Price received an IPAD rating of 3 and a 0% raise, as did the male field representatives at the Chestnut Service Center who had an IPAD rating of 3 that year. O'Neil received an IPAD rating of 4 in 2009 and a raise of 3.8%, which was higher than four men working as field representatives at the Chestnut Service Center who had also received an IPAD rating of 4. Miller and one other man working as a field representative at the Chestnut Service Center received an IPAD rating of 2 in 2009 and both received a 0% raise.

Goebel is currently the highest paid field representative at the St. Cloud Service Center. The record shows that in 2008 and 2009 no field representative at the St. Cloud facility received a higher IPAD rating or a larger percentage raise than she did. She was given an IPAD rating of 5 in 2008 and 4 in 2009, which led to raises of 6.5% and 3.8% respectively.

The women admit that they were never subject to overtly discriminatory statements and that their IPAD ratings never appeared to be discriminatory at the time they received them. Stifter testified that when he supervised both the Chestnut and St. Cloud Service Centers, his IPAD ratings and recommended raises were based, at least in part, on the flexibility of employees to work at the end of the day. At one point O'Neil and Miller asked Stifter what they needed to do to receive the highest IPAD rating. He responded that no field representative had ever received that rating. The women allege that this statement by Stifter could not have been true given the current pay discrepancy between field representatives. The women allege that Stifter's actions during his time as their supervisor impact their pay today.

Price, Miller, O'Neil, and Goebel filed a complaint in 2009 under the EPA, the MHRA, and Title VII, alleging that NSP had engaged in pay practices that discriminated against women. NSP moved for summary judgment, arguing that the plaintiffs could not establish a prima facie case and that, even if they could, NSP was entitled to statutory affirmative defenses because any gender discrepancy in pay was based on a legitimate merit based system at the company or a factor other than sex. The district court granted summary judgment to NSP after concluding that none of the women had established a prima facie case of wage discrimination under the EPA. It also dismissed the women's MHRA and Title VII claims since EPA standards apply to Title VII discrimination claims of "unequal pay for equal work" and are also used to analyze MHRA claims.

The four women appeal, arguing that they stated a prima facie case of discrimination under the EPA and that NSP did not meet its burden to prove its affirmative defenses. The women further contend that the district court had failed to consider relevant evidence from before 2007.

II.

We review de novo the district court's grant of summary judgment to NSP. Younts v. Fremont Cnty., Iowa, 370 F.3d 748, 751 (8th Cir. 2004). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the women and giving them the benefit of all reasonable inferences, shows there are no genuine issues of material fact and NSP is entitled to judgment as a matter of law. Id. The women's claims under the MHRA and Title VII are governed by the same standards as their EPA claim. See Taylor v. White, 321 F.3d 710, 715 (8th Cir. 2003), Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 327 F.3d 771, 785 n.11 (8th Cir. 2003). Thus if summary judgment was proper on the women's EPA claim, it was also proper on their MHRA and Title VII claims.

The EPA prohibits pay discrimination on the basis of sex. 29 U.S.C. § 206(d). A plaintiff must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions. Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1080 (8th Cir. 1999). If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to prove one of four statutory affirmative defenses. Id. at 1081. Those defenses require an employer to prove that any wage differential is explained by "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). In an EPA case, "a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. . . . [it] must prove that the pay differential was based on a factor other than sex." Taylor, 321 F.3d at 716.

Claims under the EPA generally have a two year statute of limitations. 29 U.S.C. § 255(a). Evidence of wage discrimination need not be confined to the EPA's two year limitation period, however, for a court may consider relevant evidence from before that period while assessing the worker's claims. See Corning Glass Works v. Brennan, 417 U.S. 188, 205 (1974).

A.

The district court concluded that Price, O'Neil, and Miller had not established a prima facie case of wage discrimination under the EPA and that, even assuming they had, there was no factual dispute that NSP had established affirmative defenses to liability. It found that the women and men who worked as field representatives at the Chestnut Service Center had entered the position with different starting salaries for a nondiscriminatory reason and that NSP could legally give raises using a merit based system. Since the women at the Chestnut Service Center failed to "make any attempt to compare themselves to male employees receiving the same IPAD ratings,"

the court concluded that the women had not established their prima facie case. According to the court, the record showed "the kind of pattern where the protected-class members sometimes do better and sometimes do worse than their comparators, which by itself is not evidence of discrimination."

Price, O'Neil, and Miller argue that the district court erred in concluding that they could not establish a prima facie case of wage discrimination. They contend that the district court improperly placed the burden on them to show that the wage differentials could not be explained by a factor other than sex. The women argue that they can each point to several men working as field representatives at NSP who are paid more for a job requiring equal skill, effort, and responsibility. Without differentiating between the field representatives at the St. Cloud and Chestnut Service Centers, Price states that she currently makes less than eleven men. She also states that seven men who made less than or the same as she did when they started now make more than she does. Miller states that nine men currently make more than she does. She also states that five men who initially made less than or the same as she when they started as field representatives now make more than she does. O'Neil states that six men currently make more than she and that three men who initially made less than she have now surpassed her in pay.

In granting NSP's motion for summary judgment, the district court examined all the evidence produced by both the appellants and NSP and ultimately determined that any difference in pay between men and women at NSP had not been based on sex. Unlike the situation where a court must analyze a plaintiff's case independently to determine its sufficiency, as when it is reviewing a complaint for sufficiency or a defendant's motion for a directed verdict at trial, the district court here had access to all the evidence produced by both parties when deciding NSP's motion for summary judgment. Its opinion indicates that before reaching its conclusions the district court considered the evidence presented by the women in support of their prima facie case and by NSP in support of its affirmative defenses.

While the burdens in an EPA case differ from those in other discrimination cases, Taylor, 321 F.3d at 716, it was not inappropriate for the district court to review all the evidence presented by both the appellants and NSP before determining whether there was a violation of the EPA. This process is not unlike that sometimes used in Title VII cases where the court may choose to focus the analysis and decision on pretext because of the record. See, e.g., Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 792 (8th Cir. 2011); EEOC v. Trans States Airlines, Inc., 462 F.3d 987, 992 (8th Cir. 2006).

To establish a prima facie case of wage discrimination a woman must provide "sufficient evidence" that her "employer paid different salaries to men and women for equal work performed under similar conditions." Tenkku v. Normandy Bank, 348 F.3d 737, 741 n.2 (8th Cir. 2003). Equal pay for equal work is what the EPA requires, and those elements are the focus of the prima facie case. See Drum v. Lesson Elec. Corp., 565 F.3d 1071, 1072 (8th Cir. 2009). For example, a prima facie case was established in Drum because it was "undisputed that there [was] a pay differential" between a male employee and a female employee who had performed equal work. Id. at 1073. By contrast, no prima facie case was established by a woman tool maker who "was paid the same as, or more than, at least some male tool makers in the tool room." Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001). A professor also failed to state a prima facie EPA case in Houck v. Virginia Polytechnic Institute & State University, 10 F.3d 204, 206 (4th Cir. 1993), where she had not furnished information about such factors as comparative teaching load, research, or level of service.

If a plaintiff establishes a prima facie case of wage discrimination, an employer will be entitled to summary judgment if it proves that any pay differential is explained by a statutory affirmative defense, Taylor, 321 F.3d at 715, such as a merit system or a factor other than sex. A merit system must be known to employees, must not be based on sex, and must "be an organized and structured procedure whereby

employees are evaluated systematically according to predetermined criteria." EEOC v. Aetna Ins. Co., 616 F.2d 719, 725 (4th Cir. 1980). The affirmative defense of a "factor other than sex" is facially broad and may include red circling policies. Taylor, 321 F.3d at 717–18 & n.7. In Hutchins, an employer established an affirmative defense to an EPA claim by showing salary increases were based on length of service as well as employee evaluations. 177 F.3d at 1082. An employer also established an affirmative defense to liability in Timmer v. Michigan Department of Commerce, 104 F.3d 833, 844 (6th Cir. 1997), where the Sixth Circuit determined that a red circling policy was a factor other than sex that would explain the pay difference between men and women at the company.

Price, O'Neil, and Miller have failed to produce certain relevant information for their suggested comparators. They state that they are not similarly situated to four men who currently work as field representatives, but they have not established why they should not be compared with these men. When stating which male field representatives are currently paid more than each woman, the appellants do not separate the men working as field representatives at the Chestnut Service Center from those working at the St. Cloud Service Center. The data provided to support their prima facie case also do not distinguish between field representatives who were trained in investigations and those who were not. All of these factors would be important in determining whether the women have established a prima facie case of wage discrimination under the EPA.

While certain men working as field representatives currently make more than appellants do even though some of these men made the same or less than each woman when they started the job, the legitimate differences in starting salaries of field representatives and the IPAD ratings given to each field representative must also be considered. The women acknowledge that the red circling policy meant that field representatives did not have uniform starting salaries. Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 525 n.2 (8th Cir. 2000). The women further acknowledge that

each employee received an individualized IPAD rating each year and that an employee's raise was based on that rating. See Hutchins, 177 F.3d at 1082. The women fail however to address the compounding effect that red circled starting salaries and differences in raises could have had on the current salaries of field representatives. In light of NSP's red circling policy and the IPAD review system, appellants must do more than merely point to a raw difference in pay between men and women to prevail. This evidence is sufficient to establish NSP's affirmative defenses.

Appellants also allege there is an inference of discrimination because Stifter told them before 2007 that no field representative ever receives the highest IPAD rating and admitted to basing his IPAD ratings in part on whether employees were available to work at the end of the day. The women admit, however, that their IPAD ratings never seemed discriminatory at the time that they received them. The record evidence in fact supports NSP's position that their raises comported with those received by men with the same IPAD ratings. No evidence shows that men working as field representatives received raises that did not correspond to the recommended range provided by NSP in its "compensation planning tool" or were otherwise paid differently because of their sex. See id. We conclude that the district court did not err in holding that the evidence shows that some employees did better than others in given years, but did not establish that NSP was liable for a violation of the EPA.

B.

The district court also concluded that Goebel could not make out a prima facie case because the St. Cloud Service Center is a different establishment from the Chestnut Service Center and Goebel is the highest paid woman at that facility. The Chestnut and St. Cloud Service Centers are separate establishments, according to the findings of the district court, because their "locations are physically distinct, under separate supervision, and have different salary decision-making authority."

-11-

Goebel argues that the district court erred in dismissing her EPA claim because she has established a prima facie case of wage discrimination. She argues that she is appropriately compared with the men working as field representatives at the Chestnut Service Center because Wayne Stifter supervised all field representatives working at both facilities from approximately 1998 to 2006 and made compensation decisions for those employees during that period. She thus contends that the St. Cloud and Chestnut Service Centers are a single establishment under the EPA and that she has shown a prima facie case because she is paid less than nine men working as field representatives at the Chestnut Service Center.

To state a prima facie case of wage discrimination, a plaintiff must show among other things that women are paid differently than men at the same establishment. 29 U.S.C. § 206(d). An "establishment" is generally defined as "a distinct physical place of business" instead of a business enterprise. See A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 496 (1945); 29 C.F.R. § 1620.9(a). Only in "unusual circumstances" may "two or more distinct physical portions of a business enterprise [be treated] as a single establishment." 29 C.F.R. § 1620.9(b). Such treatment may be appropriate where a central administrative unit hires all employees, sets wages, and assigns the location of employment. Id.

Courts have looked closely at the facts of the individual case to decide the bounds of a single establishment. In Brennan v. Goose Creek Consolidated Independent School District, 519 F.2d 53, 56 (5th Cir. 1975), the Fifth Circuit treated a school district as a single establishment because "the central administration of the school district (not the principals of the schools)" made the relevant decisions in that case. Multiple physical locations that were centrally controlled were also considered to be a single establishment for EPA purposes in Mulhall v. Advance Security, Inc., 19 F.3d 586, 591–92 (11th Cir. 1994). In contrast, we have concluded that two business locations which were nine miles apart and served different clientele were not

a single "establishment" under the Fair Labor Standards Act.  <u>Mitchell v. Birkett</u>, 286 F.2d 474, 477–78 (8th Cir. 1961).

We conclude that the district court did not err in finding Chestnut and St. Cloud Service Centers to be separate establishments for the purposes of Goebel's EPA claim.  The evidence did not present the type of "unusual circumstances" that would support treating the two service centers as a single establishment.  The centers are approximately 75 miles apart and serve different customers.  Field representatives do not transfer between the two locations, and each service center has had its own supervisor for approximately the past three years.  Supervisors testified that employees in the two locations were not compared with one another for compensation purposes.  All of the field representatives at the St. Cloud Service Center perform investigations, while only some of the employees at the Chestnut Service Center have received the additional training necessary to perform that function.  Field representatives at the Chestnut Service Center reconnect a customer's power when appropriate, but field representatives at the St. Cloud Service Center do not provide this service.

Appellant Goebel has failed to show that the St. Cloud and Chestnut Service Centers should be treated as one establishment.  Since Goebel is the highest paid employee at the St. Cloud Service Center, she has not stated a prima facie case of wage discrimination under the EPA.  <u>See</u> <u>Grabovac</u>, 426 F.3d at 956.

III.

Accordingly, we affirm the judgment of the district court.

_____