# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-2246
_____

Ronicka Schottel

*Plaintiff - Appellant*

v.

Nebraska State College System, doing business as Peru State College

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: May 12, 2022
Filed: August 3, 2022
_____

Before SMITH, Chief Judge, COLLOTON and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Ronicka Schottel, a former employee at Nebraska State College System's (NSCS) Peru State College, brought Equal Pay Act and Title VII claims against NSCS after she received a terminal contract in 2018. The district court[1]

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

granted summary judgment in favor of NSCS on all of Schottel's claims, and Schottel appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Schottel began her employment as a criminal justice instructor at Peru State in 2012. At the time of her hiring, Schottel had two master's degrees and three years' experience as a probation officer but lacked formal teaching experience. Peru State selected Schottel over a male candidate, Daniel Hayes, who had applied for the same available position. Hayes had one master's degree, ten years' experience in corrections work, and five years' teaching experience as a criminal justice adjunct faculty member at Peru State. The hiring committee tasked with the selection of instructors considered applicants' education, field experience, teaching experience, interview performance, what they could "bring[] to the team," and whether they had "diverse thought process[es]." Dr. Greg Galardi, the Dean of the School of Professional Studies, advocated for Schottel's hiring based on her strong interview performance, unique background in probation work, and the diversity that she would bring to the School of Professional Studies. Shortly after Schottel's hiring, another criminal justice instructor position became available, and Peru State hired Hayes.

Both Schottel and Hayes began teaching in August 2012, with Schottel receiving a $48,000 annual salary and Hayes receiving a $49,500 annual salary. Schottel's salary remained approximately $1,500 less than Hayes's for five years. Dr. Todd Drew, the then-Vice President of Academic Affairs, set the salaries for both Schottel and Hayes. In an email contemporaneous to Hayes's hiring sent to several colleagues, including Peru State's president and director of human resources, Drew explained the pay differential: "[Hayes] has substantial adjunct teaching experience with us and more professional experience that is directly related to the discipline taught." When Schottel was promoted to assistant professor for the 2017-18 academic year, she received a $3,000 raise, thus earning roughly $1,319 more than Hayes per year at that point.

-2-

In April 2018, Schottel met with Timothy Borchers, who had succeeded Drew as Vice President of Academic Affairs, to discuss her potential advancement toward tenure. During the meeting, Schottel raised concerns about Galardi, her direct supervisor, including concerns about his comments to her, emails he sent to her, and his physical demeanor toward her. Schottel also mentioned Hayes being paid more than her prior to her promotion. Borchers did not share Schottel's comments about Galardi with him. Schottel later met with Galardi, during which they generally discussed the tenure track but not her concerns about him.

Early in May 2018, a student in one of Schottel's classes approached Galardi and shared concerns about passing Schottel's class after Schottel had refused to accept a late assignment. Galardi responded that Schottel had discretion to refuse late assignments and that he would not interfere with her grading decision. The student then expressed his concern about the quality of the course and Schottel's teaching performance. Specifically, he told Galardi that the weekly class never met for the entirety of its scheduled 2 hours and 45 minutes and that it had only lasted longer than 1 hour about four times that semester. The student also stated that Schottel had cancelled class four times during the semester, "barely taught the class," and did not follow the course syllabus. Galardi subsequently contacted another student enrolled in the class whom he trusted. This other student confirmed that Schottel dismissed every class session early but also mentioned that another Peru State instructor regularly let class out early. No further information was provided regarding how early or frequently the other instructor prematurely dismissed class. Galardi relayed his conversations with both students to Borchers.

On May 24, 2018, Borchers notified Schottel that her employment would terminate in May 2019. He listed Schottel's "[p]ast practices of dismissing classes early, cancelling classes and failing to follow the syllabus." Peru State issued her a terminal contract, which allowed her to continue teaching through the 2018-19 academic year but would not renew thereafter.

-3-

In July 2019, after Schottel filed a charge of discrimination with the Nebraska Equal Opportunity Commission, she brought this action alleging an Equal Pay Act claim, as well as claims of gender-based harassment, gender discrimination, and retaliation in violation of Title VII. NSCS filed a motion for summary judgment on all of Schottel's claims, which the district court granted.[2] Regarding Schottel's claim that NSCS violated the Equal Pay Act by paying Hayes more than her, the district court determined that NSCS proved that it had a non-discriminatory reason for paying Schottel less: Hayes's superior experience was better suited for the teaching role. The district court largely relied on Drew's email explaining the pay differential. As to Schottel's gender discrimination claim, the district court determined that the claim was based entirely on wage discrimination and therefore failed for the same reason as her Equal Pay Act claim. The district court further rejected Schottel's attempt to morph her wage discrimination claim into a disparate treatment claim at the summary judgment stage. Finally, as to Schottel's retaliation claim, the district court concluded that she failed to prove a causal link between her protected conduct—complaining about the pay differential—and NSCS's decision to issue her a terminal contract.

II.

Schottel asserts that the district court erred in granting summary judgment on her Equal Pay Act claim and Title VII claims of gender discrimination and retaliation. "We review a grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party." Wages v. Stuart Mgmt. Corp., 798 F.3d 675, 679 (8th Cir. 2015). We "give [the nonmoving party] the 'benefit of all reasonable inferences in the record.' Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Shanner v. United States, 998 F.3d 822, 824 (8th Cir. 2021) (citations omitted).

---

[2]Schottel does not challenge the district court's grant of summary judgment on her gender-based harassment claim.

A.

Schottel first argues that the district court erroneously granted summary judgment in NSCS's favor on her Equal Pay Act claim and gender discrimination claim based on unequal pay. "The [Equal Pay Act] prohibits pay discrimination on the basis of sex. A plaintiff must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions." Price v. N. States Power Co., 664 F.3d 1186, 1191 (8th Cir. 2011) (citation omitted). The burden shifts to the defendant if the plaintiff establishes a prima facie case. Id. The defendant must "prove that any wage differential is explained by '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" Id. (citation omitted). It "cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action," but instead "must prove that the pay differential was based on a factor other than sex." Id. (citation omitted). Because Schottel's gender discrimination claim is based on "unequal pay for equal work," we analyze it under the same standard applied to her Equal Pay Act claim. See Tenkku v. Normandy Bank, 348 F.3d 737, 741 (8th Cir. 2003).

The parties do not dispute that Hayes was paid more for the same position from when Schottel and Hayes were hired until Schottel's promotion in 2017; thus, it is undisputed that Schottel has set forth a prima facie case. The parties dispute, however, whether NSCS satisfied its burden to prove that the pay differential was based on a factor other than sex. We agree with the district court that NSCS met its burden. NSCS offered sufficient evidence that Hayes received a higher salary because he had significantly more experience than Schottel. See Hutchins v. Int'l Brotherhood of Teamsters, 177 F.3d 1076, 1081 (8th Cir. 1999) ("A differential that is based on education or experience is a factor other than sex recognized by the Equal Pay Act."); see also Lawrence v. CNF Transp., Inc., 340 F.3d 486, 493-94 (8th Cir. 2003) ("[E]xperience with a company may constitute a factor in the salary calculation."). Upon his hiring as an instructor, Hayes had already worked at Peru

State as a criminal justice adjunct professor for five years. He also had ten years' experience as a case worker and case manager at a nearby correctional institute. In contrast, Schottel had no teaching experience and only three years' relevant professional experience as a probation officer. The email sent by Drew, the administrator responsible for setting faculty salaries, to colleagues before Hayes's hiring demonstrates that the $1,500 annual salary difference was based on Hayes's objectively more extensive experience. The email reflects a "finely calibrated evaluation[]," based on legitimate factors, that resulted in a marginal pay differential permissible under the Equal Pay Act. Brousard-Norcross v. Augustana Coll. Ass'n, 935 F.2d 974, 979 (8th Cir. 1991).

Schottel maintains that her being hired before Hayes demonstrates her superior experience. This assumption is erroneous, as Schottel conflates Peru State's hiring and salary decisions. The record contains Peru State's reasons for hiring Schottel before Hayes, which differ from its reasons for paying her approximately three percent less than Hayes. Schottel acknowledges that Peru State's hiring decisions, led by a hiring committee, are based on both objective and subjective criteria, and the record reflects Peru State's focus on the subjective criteria, including Schottel's interview performance and the diversity that she would bring to the faculty, which supported the school's choice to hire her first. In contrast, Schottel does not dispute that salary decisions, generally made by the vice president of academic affairs, are based solely on objective criteria. Schottel also highlights her 2017 promotion as evidence of her qualifications, but we agree with NSCS that the decision to promote Schottel is not evidence of a superior resume when she was hired five years earlier.

The district court appropriately resolved this claim at the summary judgment stage because the determination that Hayes had more experience than Schottel did not require weighing the evidence and no reasonable jury could have found that the slight pay differential was based on Schottel's sex. This case does not present a scenario in which the male employee had significantly fewer qualifications or capabilities than the lesser-paid female employee. See, e.g., Simpson v. Merchs. &

Planters Bank, 441 F.3d 572, 579 (8th Cir. 2006) (detailing job capabilities of female employee in comparison to job capabilities of higher-paid male employee). We conclude that the district court correctly granted NSCS summary judgment on Schottel's Equal Pay Act and gender discrimination claims. In the absence of "intentional discrimination" and without "the authority to sit as super-personnel departments," we make no comment on the "wisdom or fairness" of Peru State's hiring and salary decisions. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (citation omitted).

B.

Schottel next argues that NSCS violated Title VII because it issued her a terminal contract in retaliation for her complaints about Galardi and unequal pay. Title VII contains an antiretaliation provision that prohibits an employer from discriminating against an employee because the employee opposed a practice made unlawful by Title VII. Muldrow v. City of St. Louis, 30 F.4th 680, 690-91 (8th Cir. 2022). Because Schottel relies on indirect evidence, we apply the McDonnell Douglas[3] framework to her Title VII retaliation claim. See id. at 691. "To establish a prima facie case of retaliation, an employee-plaintiff must show that '(1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct.'" Id. (citation omitted). Then, "[i]f the employee establishes a prima facie case, 'the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action.' If the employer satisfies its burden, 'the burden then shifts back to the employee to put forth evidence of pretext.'" Id. (citations omitted).

We agree with the district court that Schottel engaged in protected activity by complaining to Borchers about the pay differential, and she suffered a materially adverse employment act when she received a terminal contract. The parties focus their dispute, however, on whether Schottel proved a causal link between her

---

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

complaints to Borchers and the later terminal contract. Schottel "must prove that her opposition to unlawful discrimination was the 'but for' cause of the employer's adverse action." Porter v. City of Lake Lotawana, 651 F.3d 894, 898 (8th Cir. 2011) (citation omitted). Schottel's retaliation claim hinges on Galardi initiating an investigation into Schottel's early class dismissals after Schottel met with Borchers and raised concerns about Galardi and the pay differential between her and Hayes. However, Schottel fails to demonstrate that Galardi, as the decision-maker responsible for the investigation that led to her termination, had any awareness of Schottel's protected activity when he began the investigation. Id. at 899 (concluding that employee's opposition to unlawful discrimination could not have played role in her discharge when she offered no evidence that decision-makers responsible for discharge had knowledge of protected conduct). Galardi stated under oath that he was unaware of Schottel's complaints when he began the investigation, and Borchers similarly stated under oath that he had not shared Schottel's complaints with Galardi. Schottel confirmed that Borchers had told her that he would keep her concerns in confidence. The evidence instead supports NSCS's position that Galardi began his investigation because a student approached him with concerns about Schottel's management of her class.

Schottel's reliance on temporal proximity falls short of establishing causation. Schottel highlights the fact that Galardi's investigation began less than three weeks after her meeting with Borchers. However, "temporal proximity alone is insufficient to demonstrate a genuine issue of material fact as to whether conduct was retaliatory." Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062, 1069 (8th Cir. 2017). And although we have determined that a six-week period can "plausibly allege[] a but-for causal connection," NSCS presents a "lawful, 'obvious alternative explanation[]' for the alleged conduct" that renders Schottel's theory of causation based on temporal proximity implausible. See Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 373 (8th Cir. 2017) (citation omitted). That lawful alternative explanation is Schottel's habitual early dismissal and cancellation of class and failure to follow the syllabus, in violation of school policy.

Even if Schottel proves causation, Schottel fails to put forth evidence demonstrating pretext in response to NSCS's legitimate reason for issuing her a terminal contract. "To show pretext, the [employee] must both discredit [the employer's] proffered reasons for the alleged retaliatory action and show that the circumstances permit drawing a reasonable inference that retaliation was the real reason for the adverse employment action." Sellars v. CRST Expedited, Inc., 13 F.4th 681, 694 (8th Cir. 2021), cert. denied, 142 S. Ct. 1361 (2022). As described above, the evidence does not support the inference that Schottel's complaints to Borchers were the reason for her later termination when Galardi, the decision-maker responsible for initiating the investigation, was unaware of her complaints. Schottel also relies on evidence that Galardi and Borchers knew of a similarly situated male colleague who also dismissed class early yet took no action against him. This vague evidence does not permit a reasonable inference of pretext because Schottel merely speculates as to the frequency of the male colleague's actions in violation of NSCS policy. See Doucette v. Morrison Cnty., 763 F.3d 978, 984 (8th Cir. 2014) (explaining that female employee did not provide enough information about male coworkers to create genuine issue of material fact regarding pretext because "[w]e gauge the seriousness of misconduct in part based on its frequency, and [she] has not indicated how many times these asserted comparators engaged in the misconduct for which she asserts they should have been disciplined"). Because Schottel shows neither causation nor pretext, the district court did not err in granting NSCS summary judgment on Schottel's retaliation claim.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____