# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2012

No. 12-50212
Summary Calendar

Lyle W. Cayce
Clerk

KELLY JO SUTER, Ph.D.,

Plaintiff-Appellant

v.

UNIVERSITY OF TEXAS AT SAN ANTONIO; GEORGE PERRY, Ph.D.;
JAMES M. BOWER, Ph.D.; MATHEW J. GDOVIN, Ph.D.; ROBERT W.
GRACY, Ph.D.; J. AARON CASSILL, Ph.D.; EDWIN J.
BAREA-RODRIGUEZ, Ph.D.,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CV-692

Before REAVLEY, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Kelly Jo Suter appeals the district court's grant of summary judgment in favor of Defendant-Appellees on her tort and contract claims and her claims under 42 U.S.C. § 1983 and the Equal Pay Act, 29 U.S.C. § 206. Suter is a biology professor at Defendant University of Texas at San

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50212

Antonio ("UTSA" or "University"). Suter alleges that Defendants mishandled start-up funds that she expected would be available to her when she began employment at the University, which funds were meant to support her in establishing a research laboratory at UTSA. In particular, she alleges that the individual Defendants failed to fully inform her about or otherwise secure a key source of funding for her research, namely a federal grant through the Research Centers in Minority Institutions (RCMI) program. Suter claims that as a result of Defendants' acts and omissions, she lost a year of research and suffered professional injury therefrom. She further alleges that she has suffered unequal treatment on the basis of gender, because two male professors at UTSA received RCMI funding even when she had not, and because there is a variance in pay for female and male professors. Suter filed suit on July 16, 2010.

Suter makes two contentions on appeal. First, she argues that the district court erred in twice denying her leave to amend her complaint. We review the district court's refusal to grant leave to amend for abuse of discretion. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Second, Suter argues that the district court erred in granting summary judgment to Defendants on her various claims. We review the district court's grant of summary judgment *de novo. Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). For the reasons that follow, we AFFIRM.

I.

At pretrial, the district court entered a scheduling order that set a deadline for "all motions to amend or supplement pleadings" by January 13, 2011. On that date, Suter filed a first amended complaint, but she neglected to file a motion for leave to amend. Suter filed her first motion for leave to amend thirty days later. Additionally, forty-eight days after the January 13 deadline, Suter filed a second amended complaint that was accompanied by a motion for

No. 12-50212

leave to amend. The district court denied both motions and ordered that the two amended complaints be stricken from the record.

Suter argues that, at the very least, the first amended complaint should have been the "live" complaint at trial because it was timely filed, even if it was not accompanied by a formal motion for leave to amend. Suter cites Federal Rule of Civil Procedure 15(a), which states that the district court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). However, Rule 15(a) is inapposite because Suter never requested leave to amend, whether in a formal motion or within the body of her amended complaint. "[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect." *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals.")

Failing that argument, Suter invokes Rule 16(b), which permits a district court to modify its schedule on a showing of good cause. FED. R. CIV. P. 16(b)(4); *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). Suter contends that although she was late in filing her two motions for leave, the district court nevertheless abused its discretion in denying those two motions because she could show good cause for her delay. However, the district court did not abuse its discretion in ruling that Suter had failed to show good cause. Suter's only meaningful explanation for why her motions were late was that she was waiting for a right-to-sue letter from the EEOC. Yet, as the district court pointed out, the good cause standard of Rule 16(b) "requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.*, 315 F.3d at 535

3

No. 12-50212

(citation omitted).  Suter did not conduct due diligence with respect to the right-to-sue letter; indeed, she failed to inquire about the letter for two months even though she knew there was an impending deadline.  Thus, the district court did not abuse its discretion in ruling that Suter had failed to show good cause, nor did it abuse its discretion in deciding to enforce its scheduling order.

## II.

Suter also contests the district court's grant of summary judgment to Defendants on her five state law claims and two federal law claims.  First, Suter argues that the district court erred in ruling that her state law claims for negligence, negligent misrepresentation, tortious interference with contract, breach of fiduciary duty, and breach of contract were time-barred.

Under Texas law, tort claims for negligence, negligent misrepresentation, and tortious interference are subject to a two-year statute of limitations.[1]  Claims for breach of fiduciary duty and breach of contract are subject to a four-year statute of limitations.[2]  "Limitations begins to run upon accrual of the cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006).  In most cases, the legal injury rule applies, under which "a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998); *see Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).  In some rare cases when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable,"

---

[1] *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (negligence); *Hendricks v. Thornton*, 973 S.W.2d 348, 364 & n.19 (Tex. App.—Beaumont 1998, pet. denied) (negligent misrepresentation); *Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 118–19 (Tex. App.—Austin 1993, no writ) (negligent misrepresentation); *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 699 (Tex. App.—Austin 1993, writ denied) (tortious interference with contract).

[2] TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004(a)(5) (breach of fiduciary duty), 16.051 (residual limitations period).

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996), the statute of limitations is tolled by the discovery rule, under which "a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, 'should have known of the wrongful act and resulting injury.'" *Childs*, 974 S.W.2d at 37 (citation omitted).

The district court did not explicate the accrual date for Suter's actions for negligence, negligent misrepresentation, and tortious interference. Instead, the court merely stated that, "[t]hough it is likely that any such claims arose before this time, in February 2008, the Plaintiff initiated the first of several formal complaints against University employees for mishandling her 'start-up' funds. It is clear that this is the *latest possible* time at which the Plaintiff knew, or should have known of the existence of any of these claims. Because the original complaint in this case was not filed until July of 2010, each such claim is barred by limitations." It appears that the district court assumed, implicitly and for the sake of argument, that the discovery rule applied to these three tort claims and held that even under the discovery rule the claims were time-barred. So construed, we agree with the district court's reasoning.

Assuming that the discovery rule applies, the latest that the rule could have tolled limitations was when Suter learned about the mishandling of her funds. Suter argues on appeal that limitations could not have barred judgment against *all* the defendants because she only learned after July 2008 (and thus less than two years before July 2010) about certain defendants' acts and omissions regarding the mishandling of funds. In other words, Suter interprets the discovery rule to mean that a cause of action accrues not when a plaintiff learns of her injury, but rather when she learns about the specifics of each wrongful act that might have caused her injury. However, the Texas Supreme Court has expressly rejected that interpretation of the discovery rule and has clarified that the rule means "that accrual occurs when the plaintiff knew or

No. 12-50212

should have known of the wrongfully caused injury." *KPMG Peat Marwick*, 988 S.W.2d at 749. Suter learned about the mishandling of her start-up funds, in particular Defendants' failure to provide RCMI funds to her, in February 2008, which is more than two years before July 16, 2010. She therefore cannot prevail on these three tort actions under the discovery rule, meaning she cannot prevail under the legal injury rule either. Her actions for negligence, negligent misrepresentation, and tortious interference are necessarily time-barred under Texas's two-year statute of limitations.

In contrast, the district court did decide on an accrual date for Suter's breach of fiduciary duty and breach of contract claims. To wit, the district court concluded that the two causes of action accrued when Suter's start-up funds were not immediately available to her upon her employment date of July 1, 2006. We agree. Under the legal injury rule, the default accrual date for limitations would be the date on which an injury occurred. For breach of fiduciary duty and breach of contract claims, an injury occurs at the moment of breach. *Leigh v. Weiner*, 679 S.W.2d 46, 48–49 (Tex. App. 1984) (breach of fiduciary duty); *Barker*, 213 S.W.3d at 311 (breach of contract). After Suter was hired, she expected all of her start-up funding, including the $100,000 in RCMI funds, to be made immediately available for the purposes of setting up her research laboratory. Indeed, Suter's main complaint is that she would not have accepted UTSA's employment offer had she known that the funds were not immediately available and that they were subject to a conditional carry-forward request. Thus, if any breach occurred, it occurred when the funds were not immediately available at the moment Suter expected them to be—that is, on July 1, 2006. This is therefore the date on which she suffered an injury and is the default accrual date for her breach of fiduciary duty and breach of contract claims.

However, this does not end our inquiry. Suter further argues that the discovery rule tolls the statute of limitations for these two causes of action. The

district court disagreed with Suter, stating simply that "Plaintiff has failed to sufficiently plead [the discovery rule] or to plead facts that would properly put the defendant on notice of such a defense."[3]   The discovery rule must be affirmatively pleaded in federal court, whether specifically or through "sufficient facts to put the defense on notice of the theories on which the complaint is based." *Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993) (internal quotation marks and citation omitted).  We need not decide whether Suter sufficiently pleaded the discovery rule, because we hold that even if she did, she has failed to establish the defense by proof on summary judgment.

Under Texas law, "[t]he discovery rule, in application, proves to be a very limited exception to statutes of limitations. . . . Generally, application has been permitted in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.   The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'" *Computer Assocs.*, 918 S.W.2d at 455–56 (citation omitted).

While Suter claims, and Defendants do not dispute, that she learned about insufficiency of funds in October or November 2006, there is evidence that she was earlier put on notice about funding sources and deadlines.  Most notably, Suter's employment offer letter, dated May 30, 2006, explicates that her $200,000 for equipment "[m]ust be spent within the RCMI grant cycle[.]"  While the letter does not clarify the end of the then-current grant cycle, Suter at least

---

[3] The district court and Defendants have also pointed out that Suter cannot prevail on a theory of fraudulent concealment.  On appeal, Suter's arguments concerning fraudulent concealment are at most tangential.  In any case, the theory does not alter our analysis.  We therefore consider the discovery rule aside from any claim of fraud or concealment.

should have been aware that there was a deadline for the funds, and she could have easily asked Defendants or others about the deadline. There is no evidence that Defendants would have misrepresented such information or otherwise withheld it from her. Moreover, Suter was never foreclosed from herself obtaining information on the RCMI program, since such federal grant money was administered through the National Institutes of Health (NIH), with the University acting only as its steward. While Suter might not have *actually* known about the deadline to use these funds, the evidence fails to prove that information about the funds was "inherently undiscoverable." *Id.* Therefore, we hold that even if Suter sufficiently pleaded the discovery rule, the rule would not apply to toll Suter's breach of fiduciary duty and breach of contract claims, and so those claims accrued on the date of the alleged breach, July 1, 2006. Because that is more than four years before Suter filed suit, these two actions are time-barred under Texas's four-year statute of limitations.

Finally, Suter alleges that Defendants violated the Equal Pay Act. She specifically seeks damages from Defendant Edwin Barea-Rodriguez (Chair of the Department of Biology), in his individual capacity under 42 U.S.C. § 1983, for violating the Equal Pay Act. We agree with the district court's reasoning on these claims in toto.[4] To wit, the district court properly concluded that Defendants proved by a preponderance of the evidence that there was adequate justification for variances in pay between Suter and other professors with similar qualifications. In particular, differences in pay between Suter and Dr. Fidel Santamaria and Dr. Todd Troyer—her two male colleagues with whom she

---

[4] Suter specifically alleges that Barea-Rodriguez violated the Equal Pay Act because he "authorized and/or approved higher pay levels for male faculty" than for female faculty. The district court awarded summary judgment to Barea-Rodriguez on the ground that Suter's § 1983 claim against him was a remedial redundancy, when she already had a claim against the University under the Equal Pay Act. We agree with this reasoning, but it is unnecessary to decide the outcome, as Defendants have sufficiently proved that Suter cannot prevail under the Equal Pay Act, whether against Barea-Rodriguez or any other defendant.

No. 12-50212

constitutes the RCMI "faculty development core"—are based on merit evaluations, a system under which Suter has even benefitted.[5] These merit evaluations are in turn based on a professor's teaching, research, and service, and the system also considers the seniority of professors—all of which proves affirmative defenses to a prima facie case under the Equal Pay Act. *See Siler-Khodr v. Univ. of Tex. Health Science Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001) ("[T]he four affirmative defenses set forth in the Equal Pay Act [are] (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex.") (internal quotation marks and citation omitted). Accordingly, we affirm the district court's summary judgment for Defendants on Suter's Equal Pay Act and § 1983 claims.

AFFIRMED.

---

[5] For example, in September 2010, Suter received a one-time bonus that was about $400 greater than Santamaria's, based on a better annual evaluation rating for Suter. Additionally, since the 2009 academic year, Suter has earned more than Troyer.