*Vt. Human Rights Comm'n v. State of Vermont*, No. 778-11-12 Wncv (Toor, J., Oct. 21, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

| | |
|---|---|
| VERMONT HUMAN RIGHTS COMMISSION, et al.<br>  Plaintiffs<br><br>  v.<br><br>STATE OF VERMONT, et al.<br>  Defendants | Docket No. 778-11-12 Wncv |

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Vermont Human Rights Commission and three female Vermont Department of Corrections (hereinafter "Corrections") employees (Lynne Silloway, Mary Bertrand, and Lisa DeBlois) have filed suit against Corrections and the Vermont Department of Human Resources for violation of the Vermont Fair Employment Practices Act. Each individual plaintiff is currently employed as an Administrative Service Coordinator IV (hereinafter "ASC"). Plaintiffs allege that Corrections is paying another ASC, John Doe,[1] as much as $10,000 more per year than the female ASCs without a legally defensible, gender-neutral reason. Defendants respond that Doe's higher salary does not violate the Vermont Fair Employment Practices Act because the wage differential is based on a combination of a seniority system, merit system, and other factors besides sex.

The parties have filed cross-motions for summary judgment. Both argue that no material facts are in dispute and that the case can be resolved in their favor on summary judgment. Karen Richards, Esq. represents the Human Rights Commission; Emily Joselson, Esq., Katherine Kramer, Esq., and David Sleigh, Esq. represent the individual plaintiffs; David Groff, Esq., and

---

[1] This is not his real name. He has been referred to as John Doe by both parties throughout the pending motions.

Jana Brown, Esq. represent Defendants. The Vermont Commission on Women and several other organizations have also filed an amicus curiae brief in support of Plaintiffs. The brief was filed by the late Cheryl Hanna; the amici were represented at oral argument by Karen Richards, Esq. Oral argument took place on July 30.

Undisputed Facts

The following facts are undisputed. In October 2003 the Southern State Correctional Facility (hereinafter "Southern State") opened. Southern State was designed to house 350 inmates (including high security inmates and those with mental health and/or significant medical needs), employ 135 staff members, and be the second largest Corrections facility in Vermont. Southern State needed to be staffed prior to opening. It was the opinion of Southern State management that food service would be an essential component of the operation, as with any correctional facility. Food service was the responsibility of the Food Service Supervisor (hereinafter "FSS"). In 2003 the minimum qualifications for the FSS position included a high school diploma (or equivalent) and four years of experience in volume cooking with related supervision experience. However, the position was not classified as a supervisory position.

The contractual entry rate was Pay Grade 18, Step 1 with an hourly wage of $13.65. The FSS position was advertised by open competitive posting within Vermont. Corrections received applications from nine individuals who met the minimum criteria and interviewed three of them.[2] Only one of the qualified applicants was a woman, and she did not respond to requests for an

---

[2] Plaintiffs do not challenge Corrections' interviewing practices, but the record indicates that there were reasons why six qualified applicants were not interviewed. The parties do dispute whether nine applicants meeting the minimum qualifications indicates that there was a shortage of qualified applicants for the position. Additionally, there is inconsistency on whether there were nine applicants in total, *see* Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary Judgment (hereinafter "Plaintiffs' Facts") ¶ 43; State of Vermont's Response to Plaintiffs' Statement of Undisputed Facts (hereinafter "State's Response") ¶ 43, or nine applicants who met the minimum qualifications. *See* State of Vermont's Statement of Undisputed Facts (hereinafter "State's Facts") ¶ 16; Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts (hereinafter "Plaintiffs' Response") ¶ 16.

2

interview. Of the three applicants who were interviewed, Doe had the most experience (23 years), the most related advanced degrees (a Bachelor's Degree in Hotel and Restaurant Administration and an Associate's Degree in Culinary Arts and Restaurant Management), and received the highest interview score (34 as compared to 32.75). When Doe applied for the FSS position he was making an hourly wage of $35.17 in the private sector as the Director of Environmental Services, Nutrition, Food Services and Laundry at an 81-bed hospital.

Keith Tallon, Superintendent of Southern State, believed Doe's qualifications exceeded those of the other applicants and that he would hold a unique value to Southern State because of the special factors involved in opening a new facility. Tallon requested permission from Corrections management at Central Office to submit a "hire-into-range" (hereinafter "HIR") request. Tallon's request was granted and he prepared an HIR request pursuant to State of Vermont Personnel Policy and Procedure Manual Policy Number 12.2 (hereinafter "Policy 12.2"). An HIR request is used when an offer for employment with the state is to be made above Step 1.[3] Such an exception to the typical hiring scheme is only allowed in rare circumstances, with prior approval, and for the following reasons:

- There is a shortage of qualified applicants for the position;
- [A]n applicant who has special qualifications, training, or experience that while [they] are not necessarily a requirement of the job, have some unique value to the organization;
- [T]he candidate possesses exceptional and outstanding qualifications that exceed those of other applicants and to such an extent that not hiring that particular employee will be detrimental to the State.

Policy 12.2 (Plaintiffs' Ex. 2). Tallon's HIR request was reviewed by the Corrections Commissioner's Office and then forwarded to the Department of Personnel (hereinafter

---

[3] A basic understanding of pay grades and steps for Vermont state employees is helpful here. Typically, a job is assigned to one of 28 pay grades (5-32) and a person hired into that job is hired in at Step 1. Through a set seniority system and merit increases an individual receives step increases up to Step 15.

3

"Personnel")[4] for final approval. Molly Paulger (nèe Ordway) was the Personnel employee responsible for reviewing HIR requests. Paulger received the HIR request for Doe on August 27, 2003 and approved it on August 28, 2003. Doe was offered, and accepted, the position of FSS at Southern State at Pay Grade 18, Step 13 with an hourly wage of $19.49. His official hire date was September 15, 2003.

The parties dispute how thorough the HIR request was, but the undisputed facts indicate that the HIR request detailed Doe's qualifications, his current salary, the Pay Grade and Step being requested, how the FSS position was advertised, and which applicants met the minimum qualifications, along with pertinent information about them. The HIR request included Tallon's opinion that

> [w]ith the limited amount of applicants and even smaller amount interviewed, [Doe] would be a quality hire. Not solely based on limited applicants but due to his extensive work history, education, training and his experience, [Doe] stood out and would most definitely hold a unique value to the Southern State Correctional Facility. . . . It would be detrimental to the Department of Corrections not to employ and compensate [Doe] since the position of Food Service Supervisor at the Southern State Correctional Facility is presently non-similar to any other comparable positions within the Department of Corrections. . . . To employ someone with [Doe's] work history, experiences, education and performing under a short time-line, compensation would be required of anyone who was as high caliber as he. If the hire into range request is approved, [Doe] would be losing almost half his current rate of pay. . . . [T]he request to hire in range is absolutely essential at this time.

Doe Hire-into-Range Request (Plaintiffs' Ex. 11). While Plaintiffs dispute the accuracy of Tallon's conclusions, they do not dispute that the HIR request contains his opinions as of August 2003. What is not contained in the HIR request is also undisputed. It did not contain a listing of the other employees or classes that could be affected by the HIR request, information about other

---

[4] Personnel has since changed names and is now the Vermont Department of Human Resources.

4

similar recent hires, a description of the qualifications of staff in the same position, the total number of applicants,[5] an explanation for why the one state employee applicant was not given first consideration, and turnover/vacancy data for the position class over the past two years. All of these were required under the HIR policy.

While the HIR request did include a copy of Doe's Standard State of Vermont Employment Application and his resume, it did not include a copy of the hiring certificate. The hiring certificate is supposed to include the applications and resumes of other candidates. Instead, the HIR request included a chart describing all minimally qualified candidates. The State asserts that this included everything, and more, that would be contained in the hiring certificate.

In 2003 Paulger was the sole employee responsible for approving HIR requests. When reviewing an HIR request, Paulger typically referenced Policy 12.2 and carefully scrutinized submitted documentation to determine if there were sufficient reasons to grant the HIR request. Paulger apparently granted the HIR request for Doe without requiring additional documentation or explanations.[6] It was her opinion that the HIR request as submitted provided sufficient reasons to hire Doe at Pay Grade 18, Step 13. Paulger knew of the unique circumstances surrounding the staffing of Southern State.

When he started as the FSS for Southern State, Doe was making more than all other incumbent FSSs at other facilities, all of whom were women. The incumbents were in steps two, three, seven and twelve respectively.[7] Under the applicable collective bargaining agreement

---

[5] *See supra* note 2.

[6] Paulger does not recall requesting additional information and the record before the court does not indicate that anything was provided. Given the quick turn-over (HIR request submitted to Paulger on August 27, 2003 and approved on August 28, 2003), it seems unlikely that additional information was provided.

[7] Defendants have provided two different charts giving the information on the other employees in the FSS position when Doe was hired. *Compare* State's Facts ¶ 66, *with* State of Vermont's Motion for Summary Judgment and

5

(hereinafter "Agreement"), the incumbents' step levels could have been raised to eliminate pay inequality. Corrections Bargaining Unit Agreement, Article 49, § 14(a) (Plaintiffs' Ex. 9).[8]

After Doe was hired as the FSS for Southern State, his salary progression throughout his state employment was governed by the Agreement. Pursuant to the Agreement, Doe received an annual cost of living assessment (hereinafter "COLA") each July. Doe also received step increases pursuant to the schedule detailed in State of Vermont Personnel Policy and Procedure Manual Policy Number 12.1 (hereinafter "Policy 12.1"), and a 5% raise when the FSS position was changed to FSS II. In July 2006, Doe was an FSS II in Pay Grade 20, Step 11, with an hourly wage of $22.43.

On August 20, 2006 Doe received a step increase to Pay Grade 20, Step 12, and was put into the new job of Business Manager A (hereinafter "Business Manager"). The parties dispute whether this was a promotion or a "new hire." *Compare* State's Facts ¶ 83, *and* Plaintiffs' Response ¶ 83, *with* Plaintiffs' Facts ¶ 91, *and* State's Response ¶ 91. Business Manager was a Pay Grade 21 position, and with the step increase and 8% increase for becoming a supervisor (regardless of how many pay grades he moved up), Doe was slotted into Pay Grade 21, Step 13 with an hourly wage of $25.01.

In mid-2006 Bertrand, Silloway and DeBlois were all Business Managers. Bertrand was earning an hourly wage of approximately $21.00; Silloway was earning an hourly wage of approximately $20.00; and DeBlois was earning an hourly wage of approximately $18.50. Bertrand had been with the State for approximately eight years and a Business Manager for approximately seven years; Silloway had been with the State for approximately four years and a

Opposition to Plaintiffs' Motion for Summary Judgment (hereinafter "State's Motion") at 13. The listed steps are based on State's Facts ¶ 66.

[8] The Agreement for the Corrections bargaining unit provided to the court is for the 2010-2012 time period. Defendants do not suggest that this language was different when Doe was hired. *See* State's Response ¶ 23.

Business Manager for approximately three years; DeBlois had been hired approximately one year earlier and became a Business Manager 45 days after Doe did.

On October 29, 2006[9] the Business Manager position was reclassified to ASCIII and raised to Pay Grade 23. Pursuant to the Agreement, Doe received another 5% raise. Over the next six years Doe received annual COLAs every July, except in 2010 when there was a reduction and in 2011 when there were no salary adjustments. Doe also received scheduled step increases. In November 2012 Doe was an ASCIII in Pay Grade 23, Step 13, with an hourly wage of $30.44. Doe's position was again reclassified on June 30, 2013 and he is now an ASCIV.[10] The corresponding 5% raise put Doe at Pay Grade 24, Step 13, with an hourly wage of $32.30. The most recent COLA prior to filing the motions for summary judgment occurred on July 14, 2013. The 2% increase put Doe in Pay Grade 24, Step 13, with an hourly wage of $32.95. Doe's next step increase is scheduled for June 30, 2016. Consistent with the Agreement, Bertrand, Silloway, and DeBlois have received the same COLAs and reclassification increases, and have followed the same step increase pay grid. The court has not been provided with current salaries for Bertrand, Silloway, and DeBlois, but in fiscal year 2012 they made $52,146, $48,755, and $48,755 respectively as compared to Doe's fiscal year 2012 salary of $58,531. *See* Vermont Transparency, State Employee Salaries Fiscal Year 2012 (Plaintiffs' Ex. 29). Plaintiffs do not assert that Bertrand, Silloway, and DeBlois have received incorrect increases under the Agreement.

---

[9] There was a typographic error in Defendants' Statement of Undisputed Facts: this date was incorrectly written as October 29, 2009. *See* State's Facts ¶ 85; Plaintiff's Response ¶ 85. Other documents submitted to the court have the correct date of October 29, 2006. *See* Doe Pay History (Plaintiffs' Ex. 20).

[10] The reclassification from Business Manager to ASCIII to ASCIV did not involve a change in responsibilities. Silloway's, Bertrand's and DeBlois' positions were also reclassified in the same way.

7

<u>Discussion</u>

There is no dispute in this case that the individual plaintiffs and Doe hold the same positions, and that Doe is making between $6,400 and $10,200 more per year than each of the individual plaintiffs. The question is whether or not this violates the Vermont Fair Employment Practices Act (hereinafter "FEPA").

The Federal Equal Pay Act of 1963 (hereinafter "EPA") "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." <u>Dreves v. Hudson Grp. (HG) Retail, LLC</u>, 2013 WL 2634429, at *4 (D. Vt. June 12, 2013) (quoting <u>Belfi v. Prendergast</u>, 191 F.3d 129, 135 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1))) (internal quotation marks omitted). The EPA was enacted to eliminate the outdated view that a man should be paid more than a woman for doing the same work. <u>Id</u>. (citation omitted). The EPA is a strict liability statute, which means that a plaintiff does not need to establish discriminatory intent. <u>Id</u>. (citation omitted). As the amicus brief puts it, "the law punishes bad outcomes even if there are no bad actors." Brief of Amicus Curiae at 8. However, the EPA does contain several affirmative defenses.

The FEPA, Vermont's version of the EPA, contains equal pay language that is almost identical to that in the EPA. 21 V.S.A. § 495(a)(7). The FEPA also contains the same affirmative defenses as the EPA, which are at the heart of this case. Vermont courts have construed provisions of the FEPA in accordance with corresponding federal laws. *See* <u>Robertson v. Mylan Labs., Inc.</u>, 2004 VT 15, ¶¶ 16 and 41 n.8, 176 Vt. 356; <u>Hodgdon v. Mt. Mansfield Co., Inc.</u>, 160 Vt. 150, 161 (1992).

8

To state a prima facie case of discrimination under the FEPA "a plaintiff must show that i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." Dreves, 2013 WL 2634429, at *5 (citation omitted) (internal quotation marks omitted). For purposes of these motions, Defendants admit that Plaintiffs have met their burden of showing a prima facie case.

Once a plaintiff has met her burden of showing a prima facie case of discrimination, the burden shifts to the defendant employer to prove any of four affirmative defenses. Id. The applicable language of the FEPA describes the affirmative defenses as follows:

> An employer may pay different wage rates under this subsection when the differential wages are made pursuant to:
>
> (i) A seniority system.
> (ii) A merit system.
> (iii) A system in which earnings are based on quantity or quality of production.
> (iv) A bona fide factor other than sex. An employer asserting that differential wages are paid pursuant to this subdivision shall demonstrate that the factor does not perpetuate a sex-based differential in compensation, is job-related with respect to the position in question, and is based upon a legitimate business consideration.

21 V.S.A. § 495(a)(7)(A).[11]

Unlike Title VII claims, where the burden of persuasion stays with the plaintiff, that burden of proof shifts to the defendant in EPA and FEPA cases. "[I]t is the employer, not the employee, who must prove that the actual disparity is not sex linked." Price Waterhouse v.

---

[11] The language of the fourth affirmative defense was modified in 2013. Prior to that, there was a split among courts concerning the need for a "legitimate business reason" for the factor. The parties disagree over whether the 2013 amendment was a change or a clarification of the law. However, the State asserts that its defenses "easily meet the new statutory language," and thus does not object to the court applying the new language. State's Motion at 16, n.7. Thus, the court need not determine (1) whether the new language was intended to apply to prior cases, or (2) which side of the debate among the federal circuits should apply to the pre-2013 Vermont statute.

9

Hopkins, 490 U.S. 228, 248 (1989) (citation omitted) (superseded by statute on other grounds); *see, e.g.*, Dreves, 2013 WL 2634429, at *5. The "employer must prove that the gender-neutral factor it identifies is actually the factor causing the wage difference in question." Moorehead v. U.S., 88 Fed. Cl. 614, 619 (Fed. Cl. 2009) (citation omitted). "Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." Equal Pay Act Cases, 8 Emp. Coord. Emp. Pracs. § 107:29 (WL updated Oct. 2014) (citation omitted).[12]

Plaintiffs urge the court to apply a higher burden upon Defendants because they are public employers. However, neither the EPA nor the FEPA distinguishes between public and private employers. *See generally* 29 U.S.C. § 206; 21 V.S.A. § 495. The legislative intent of these statutes is to level the playing field between men and women, without regard to where an individual is employed. *See* Dreves, 2013 WL 2634429, at *4 (citation omitted). Vermont law does require state agencies to keep "fair and accurate accounts" and administer its programs in an "efficient, effective, and fiscally prudent manner," *see* 32 V.S.A. §§ 401, 704a, but that does not change the application of the FEPA.

Plaintiffs argue that principles of "public accountability" inform state compensation policies. However, the one Vermont case they cite, Coniff v. State, 2013 WL 5429428 (D. Vt.

---

[12] While not required to, a plaintiff may respond to the employer's proffered justification by arguing that it is merely a pretext, and "show that the employer did not use the factor 'reasonably in light of the employer's stated purpose as well as its other practices.'" Dreves, 2013 WL 2634429, at *5 (quoting Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 526 (2d Cir. 1992)); *see also* Ivan E. Bodensteiner & Rosalie Berger Levinson, 4 St. & Loc. Gov't Civ. Rts. Liability § 7:11 (WL updated Sept 2014) (citation omitted) ("Many courts have recognized that even where the employer proves one of the statutory defenses, the employee may rebut this with evidence that the employer intended to discriminate and that the affirmative defense is merely a pretext for discrimination."). This does not return the burden of proof to the plaintiff—instead, it is a way for a plaintiff to raise doubt about the sufficiency of defendant's defense. *See, e.g.*, Moorehead, 88 Fed. Cl. at 624–25 ("Plaintiff has not offered any evidence that reliance upon the Salary Guidance was simply a pretext for gender discrimination.").

Sept. 30, 2013), dealt with an express statutory provision under the Fair Labor Standards Act.[13] The FEPA has no similar provision. Plaintiffs also argue that another statute creates a higher burden for the State. Pursuant to 3 V.S.A. § 310(a), the State must have a "uniform and equitable plan of classification for each position within state service[.]" This does not translate into a heightened review of affirmative defenses claimed by state employers under 21 V.S.A. § 495(a)(7)(A).

### 1. 2003 Food Services Supervisor Position

With regard to the 2003 hire, Defendants rely upon the fourth affirmative defense: "a bona fide factor other than sex." Specifically, they argue that the 2003 hire was based on a legitimate hire-into-range request that was unrelated to gender. "To establish the factor-other-than-sex defense, an employer must show that 'a *bona fide business-related reason* exists for using the gender-neutral factor that results in a wage differential. . . .'" Dreves, 2013 WL 2634429, at *5 (quoting Aldrich, 963 F.2d at 526) (emphasis and modification added in Dreves). Defendants must show that Doe's starting salary:

(1) Did not perpetuate a sex-based differential in compensation;

(2) Was related to the FSS position; and

(3) Was based on a legitimate business consideration.

*See* 21 V.S.A. § 495(a)(7)(A)(iv). This is a high, and specific, burden to meet. "[T]he 'factor other than sex' defense does not include literally *any* other factor, but a factor that, at a *minimum*, was adopted for a legitimate business reason." E.E.O.C. v. J.C. Penney Co., Inc., 843 F.2d 249, 253 (6th Cir. 1988) (some emphasis added) (citation omitted).

---

[13] Plaintiffs also cite three other cases to support the proposition that the court should apply a higher burden to Defendants as a public employer. None of the cases are persuasive. There certainly is a "distinction between the public and private sector [that ]cannot be minimized." Pa. Labor Relations Bd. v. State Coll. Area Sch. Dist., 337 A.2d 262, 264 (Pa. 1975). However, the cases relied on by Plaintiffs are limited to very specific contexts unrelated to the FEPA or EPA.

11

There is no dispute in this case that Doe was hired as a result of the HIR request. As discussed above, the HIR request did not meet every requirement of the HIR policy. First, it did not include an analysis of how hiring Doe at Step 13 would affect incumbents. Defendants assert that, although no records have been located documenting such an analysis, they must have considered the impact on incumbents because Doe's starting salary was only "slightly above" that of all other incumbents. In looking at the chart[14] provided by Defendants, it is not obvious that impact on incumbents was considered. According to the chart, J.S. (female) was relatively new to the position of FSS and employment with Corrections, and was hired at Pay Grade 18, Step 1. Unlike Doe's prior food service experience, J.S.'s 11-14[15] years of food service experience were not weighted as a stand-in for Corrections tenure. However, R.G's related degree and three[16] years of food service experience were also not used to start him at a higher step. While the evidence does not show any real consistency in how prior experience and relevant degrees are credited, it also does not show that crediting Doe's prior experience and educational background perpetuated any kind of sex-based pay disparity in existence in the FSS position prior to his hire.

Although the HIR request explained that Doe was considered more qualified than all other candidates, it did not expressly compare Doe to the other qualified applicant — a male — who was already employed by the state. *See* HIR Request (Doe's qualifications were "far superior to those of all other applicants."). This potentially violated statutory language requiring that "[w]hen a vacancy in the classified service occurs, the appointing officer shall make a

---

[14] *See supra* note 7.

[15] Defendants have not provided how many years of food service experience each incumbent FSS had prior to employment with Corrections. J.S's range of 11-14 years of food service experience pre-employment is calculated by deducting "years of Corrections tenure" from "years of food services experience."

[16] *See supra* note 15. R.G.'s three years of food service experience pre-employment is calculated in the same way as J.S.'s was.

12

diligent effort to recruit an employee from within the classified service to fill the vacancy." 3 V.S.A. § 327(a). However, whether Corrections violated 3 V.S.A. § 327(a) is not the issue before the court, and is immaterial to whether FEPA was violated by the hiring of Doe at a higher salary. *See generally* 21 V.S.A. § 495(a)(7)(A). There is nothing to suggest that the failure to address this issue was gender-based.[17]

Plaintiffs repeatedly focus upon the idea that FEPA is a strict liability statute, and stress the failure of Defendants to follow all the requirements of Policy 12.2. However, Policy 12.2 is not law, and failure to follow it does not mean that Defendants' affirmative defense fails. *See* State of Vermont Personnel Policy and Procedure Manual Policy Number 1.0. An error in applying the policy does not invalidate the defense, unless there is evidence from which a jury could find that the error resulted from a gender-based decision rather than a gender-neutral one. For example, in another case in which the plaintiff claimed that the employer had incorrectly interpreted its salary policy, the court held that any such error did not establish an EPA violation because there was no evidence "that defendant applied its interpretation of the Salary Guidance in anything other than a gender-neutral fashion." Moorehead, 88 Fed. Cl. at 624. Similarly, another court addressed a misapplication of a civil service job classification system. The court noted that "as long as such errors are sex-neutral, they are not violations of the [EPA]." Timmer v. Mich. Dep't of Commerce, 104 F.3d 833, 844 (6th Cir. 1997) (citation omitted). The failure to provide all the required information when submitting the HIR request was imperfect compliance with the policy, but that does not demonstrate that it was not business-related or gender-neutral.

It is undisputed that Defendants considered their business-related needs specific to the

---

[17] Although not directly relevant to the issues before the court, it is worth noting the evidence proffered by the Defendants suggesting that from 2000 through 2010, there were 603 women hired under the HIR policy statewide, and only 404 men. Within Corrections the numbers for the same period were reportedly 29 women and 19 men. Affidavit of Harold Schwartz and Attachments A and B (filed June 13, 2014).

FSS position prior to submitting the HIR request. The request addressed the unique qualifications of Doe and his corresponding private sector salary, the limited number of qualified applicants, and the immediate need for a qualified FSS at Southern State. Plaintiffs do not dispute that Doe was qualified for the FSS position. Instead, Plaintiffs assert that Doe was too qualified. They argue that Corrections should have hired someone who met the minimum qualifications of the FSS position but did not have the extensive prior food service experience and related education experience of Doe. Plaintiffs also dispute both whether nine qualified applicants and three interviewed applicants constitutes a shortage, and whether there was an immediate need to hire a qualified FSS, especially at such a high salary. Specifically, Plaintiffs argue there could not be an "urgent" need to hire anyone because planning for opening Southern State had been going on for quite some time. They also argue that the FSS position at Southern State was not that different from similar positions at other facilities and propose numerous other "solutions." Plaintiffs propose that Southern State could have borrowed an FSS from another location, had someone do the FSS job in addition to his or her other responsibilities, or hired Doe at a lower step and given him a one-time bonus to compensate him for the additional work required in opening Southern State.

Plaintiffs submitted testimony of Corrections employees who have implemented these solutions, and the State admits that they have been used in other situations. However, the State adamantly disputes whether these proposed solutions would have been feasible or realistic at Southern State in 2003. It is not the function of this court to second guess such personnel decisions. In retrospectively analyzing any personnel decisions, courts "'may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom.'" Robertson, 2004 VT 15, ¶ 35 (citation omitted); *see also* Cnty. of Wash. v. Gunther, 452 U.S. 161, 170–71

14

(1981) (some modifications in original) (citation omitted) (internal quotation marks omitted) ("Under the Equal Pay Act, the courts . . . are not permitted to substitute their judgment for the judgment of the employer . . . who [has] established and applied a bona fide job rating system, so long as it does not discriminate on the basis of sex."); Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (citation omitted) (courts should not act as a "super personnel department"). Tallon contemporaneously expressed to the Corrections Commissioner legitimate business considerations and how Doe's qualifications would serve Corrections. *See* Doe Hire-into-Range Request. In turn, the Commissioner approved submitting the HIR request to Personnel for final approval, which was given by Paulger as a representative of Personnel. Again, no gender-based reason for the choice to hire a full-time permanent employee appears.

Defendants assert that Doe's starting salary was based on (1) prior work history; (2) education; (3) salary matching; and (4) exigent need. To support that these are accepted legitimate business reasons unrelated to sex, Defendants rely on common sense and extensive federal case law. *See* State's Motion at 18, 20–21, 23 and 24.

"Employers may reward professional experience and education without violating the EPA." Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1322 (9th Cir. 1994) (citing Soto v. Adams Elevator Equip. Co, 941 F.2d 543, 548 (7th Cir. 1991)); *see also* Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1081 (8th Cir. 1999) (citation omitted) ("A differential that is based on education or experience is a factor other than sex recognized by the Equal Pay Act."). For example, multiple circuit courts have found that prior experience is a legitimate business based reason for paying one employee a higher salary than another. *See, e.g.*, Ponamgi v. Safeguard Servs., LLC, 558 F. App'x 878, 880 (11th Cir. 2014) (salary disparity was based in part on the female employee's limited technical skills, inability to perform the same work as her coworkers,

and having the least prior experience of the individuals in the position); Murphy v. Ohio State Univ., 549 F. App'x 315, 318 (6th Cir. 2013) (salary disparity was based on male employee's starting salary being set as high as it was because he had nine years of full-time experience as a dispatcher for a sheriff's office as compared to the female employee with a lower starting salary and only two years of part-time dispatcher experience); Knadler v. Furth, 253 F. App'x 661, 665 (9th Cir. 2007) (male associate's starting salary was lower than female associate's starting salary because she had more litigation experience).

Education is also a legitimate business based reason for a higher starting salary. *See, e.g.*, Merillat v. Metal Spinners, Inc., 470 F.3d 685, 697 (7th Cir. 2006) (grant of summary judgment affirmed in part because male employee had a bachelor's degree in business administration and female employee had a one-year legal secretary degree); E.E.O.C. v. First Citizens Bank of Billings, 758 F.2d 397, 401 (9th Cir. 1985) (a marginally related college education did not entitle a male employee to a higher starting salary than a female employee with some college education and related experience).

Salary matching and hiring someone at a higher salary when there is an exigent need are also recognized as legitimate business-based reasons, especially when considered in conjunction with additional non-sex-based reasons. *See* Dreves, 2013 WL 2634429, at *6 (citation omitted) ("Generally speaking, an employer's attempt to match an employee's previous earnings may serve as a valid justification for a pay disparity."); King v. Acosta Sales & Mktg., Inc., 678 F.3d 470, 473 (7th Cir. 2012) (citation omitted) (Employer "had to match or exceed what other firms would pay in order to hire a capable staff. Neither Title VII nor the Equal Pay Act requires employers to ignore the compensation that workers could receive in other jobs, which in the language of the Equal Pay Act is a 'factor other than sex.'"); s*ee, e.g.*, Leatherwood v. Anna's

16

Linens Co., 384 F. App'x 853, 860 (11th Cir. 2010) (affirming summary judgment in part because the "exigent circumstances, specifically, a staffing shortage and the need to lure [employee] away from a competitor, justified paying him a higher wage."); Angove v. Williams-Sonoma, Inc., 70 F. App'x 500, 508 (10th Cir. 2003) (citation omitted) ("[W]here an employer sets a new employee's salary based upon that employee's previous salary and the qualifications and experience the new employee brings, the defendant has successfully invoked the [EPA]'s affirmative defense."); Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995) (citation omitted) (internal quotation marks omitted) ("prior salary alone cannot justify pay disparity under the EPA" but holding that there were other factors besides sex justifying the pay disparity); Winkes v. Brown Univ., 747 F.2d 792 (1st Cir. 1984) (giving a female co-employee a 36% raise to match the salary offered by another university did not violate the EPA).

If Defendants' choice to hire Doe was not backed up by the contemporaneous documentation of the HIR request, there might be an issue here over whether the claimed reasons were the true basis for the 2003 hire, rather than after-the-fact justifications. However, it is undisputed in this case that the now-proffered reasons were in fact the reasons given in the HIR request. There is nothing to suggest the contrary. Whether the decision to hire Doe was the best, or only, business choice at the time is not the issue.

Defendants have met their burden to show that they have an affirmative defense for Doe's 2003 salary. Doe's starting salary in the FSS position was based on bona fide factors other than sex. The higher starting salary did not perpetuate a sex-based differential, was related to the FSS job, and was based on legitimate business considerations.

## 2. 2006 Business Manager A Position

The second employment action Plaintiffs challenge is Doe's 2006 move into the Business Manager A position. The parties agree that once Doe, Silloway, Bertrand and DeBlois were in the Business Manager position they all received the same COLA, step, and reclassification increases pursuant to the Agreement. It is undisputed that these increases were applied consistently, and without discriminatory intent. However, all of the increases except for the longevity and merit step increases are calculated as a percentage of existing salary. This means that the difference in compensation between Doe and his comparators has only grown larger since 2006.

Plaintiffs argue that Corrections could have adjusted the salaries for all other Business Managers when Doe entered into the 2006 position. In connection with that argument, the parties disagree over whether Doe was "hired" as a Business Manager or "promoted" to the position of Business Manager. This is significant because, as Plaintiffs acknowledge, there is nothing in the Agreement about raising the salaries of other employees in the same position when an internal candidate is moved into a new position. Under the Agreement, other employees can be given matching raises only when a "new hire" occurs. *See* Supervisory Bargaining Unit Agreement, Article 50, § 15(a) (Ex. A to Supp. Aff. of Molly Paulger) (When an HIR occurs, "the Commissioner of Human Resources may raise the rate of current employees in that department in the same class and/or associated class to the rate of the newly hired employee."); Aff. of Thomas D. Ball ¶¶ 2–4 ("In 2006, there was no provision . . . which would allow for salary adjustments to a group of incumbent employees in a specific job classification within a

18

Department based upon another state employee's promotion into that job classification.").[18]

The fact that Doe received an 8% increase for moving into a supervisory position indicates that the position change was being treated as something other than a new hire. *See* Id. § 10 ("An employee, who moves, for the first time, into the Supervisory Bargaining Unit by promotion, upward reallocation, redesignation, upward reassignment, or lateral transfer, on or after July 1, 2005, shall receive a salary increase of eight percent (8%) regardless of the number of pay grades involved."). Moreover, although "new hire" is not defined in the Agreement, its common and obvious meaning is a person not previously employed by the employer.

Thus, the collective bargaining agreement that Defendants were required to follow did not provide for raising other employee's salaries to match Doe's when he was promoted. Plaintiffs argue that the absence of a provision in the Agreement permitting the raising of other employees' salaries does not mean it could not be done if FEPA mandated it. That may be true, but that is not the question here. The question is whether following the mandates of the Agreement shows that the different salaries are not based upon gender.

Since 2006, Doe has received various increases in pay, as have the individual Plaintiffs. Under Policy 12.1, an employee can advance to the next higher step either based on merit or because the time required at the step has been completed (seniority). The record indicates that Silloway and Bertrand have received merit increases, while Doe and DeBlois have not. Additionally, Plaintiffs do not allege that the three women were entitled to merit increases that they did not receive. Nor do they allege that the seniority provisions have been applied unequally.

---

[18] Both the Supplemental Affidavit of Molly Paulger and the Affidavit of Thomas D. Ball were filed with the court only when Defendants filed their reply. However, Plaintiffs have not raised any objection to the court considering these filings.

Merit/seniority based retention policies have been held permissible by other courts. This "type of policy rewards longevity of service and commitment to the company, strengthens employee morale, and allows an employer to avoid the cost of training employees in basic company practices." Engelmann v. Nat'l Broad. Co., Inc., 1996 WL 76107, *10 (S.D.N.Y. Feb. 22, 1996) (citation omitted); *see also* Suter v. Univ. of Tex. at San Antonio, 495 F. App'x 506, 511 (5th Cir. 2012); Price v. N. States Power Co., 664 F.3d 1186, 1193 (8th Cir. 2011) (citation omitted).

Plaintiffs also argue that because Doe has less seniority *within Corrections* than Silloway and Bertrand, his higher salary cannot be justified by the seniority system. Plaintiffs cite Irby, which states that "[i]f a seniority 'system' based on longevity . . . is to be relied upon as an affirmative defense, [defendants] must be able to identify standards for measuring seniority which are systematically applied and observed." 44 F.3d at 954 (citation omitted). It is undisputed that the seniority system was systematically applied to Doe, Silloway, Bertrand and DeBlois once they were employed by Corrections. The fact that a person with less Corrections seniority is making more than someone with more Corrections seniority does not mean that the differentials attributable to the seniority system are unjustified.

While Plaintiffs have presented multiple cases where it was held that matching the salary of a prior employer was not "a factor other than sex," that is not what happened with Doe in 2006. *See* id.; Price v. Lockhead Space Operations Co., 856 F.2d 1503 (11th Cir. 1988). Doe retained his salary from one position with Corrections when he moved to another position with Corrections. The merit/seniority system in question specifically allows employees to retain their salary, in most instances, throughout the entirety of their employment with one employer: the State.

Finally, with regard to the argument that the merit and seniority system is perpetuating an error made in 2003, there can be no perpetuation of an error if Doe's starting salary was not determined in error to begin with. Defendants have met their burden on the affirmative defenses of a merit system and/or seniority system for the current wage disparity.

Conclusion

The court recognizes the difficulties involved in eliminating the persistent wage gap between men and women. As a woman, the undersigned adamantly supports the principle of equal pay for both sexes. It is undoubtedly true that subtle and unintended discrimination continues to occur even in the most well-meaning workplaces. For example, an employer may place more value upon certain types of experience more likely to be found in men than women, even when they are actually no more useful to the job than other kinds of experience more likely to be found in women.

In this case, however, there is just nothing to suggest that such subtle discrimination was at play. Plaintiffs do not point to any female applicants for the 2003 position who were improperly evaluated or rejected as unqualified. They do not point to any female applicants for the 2006 position who were rejected over Doe. Plaintiffs argue in sum that Corrections did not fully comply with the hire-into range policy in 2003, there were other options rather than hiring Doe then, and other employees did not receive raises to match Doe's salary when he was promoted in 2006.

Nothing in FEPA, however, mandates that the HIR policy be followed in every particular. In addition, nothing in FEPA mandates that an employee not be hired or promoted if his or her

21

pay will vary from that of others in the position.[19] What FEPA does require is that, when two similar employees are paid different salaries, the employer have a legitimate reason for doing so that is unrelated to gender. No reasonable jury, on the undisputed facts of this case, could conclude that Doe's salary is the result of his gender rather than the state's seniority and merit system and other bona fide business factors.

The reality is that because of the step system used in state government, and set percentage raises based on promotions, reclassifications, reallocations, and COLAs, the gaps between certain employees in the same position will continue to grow. This is true without respect to the employees' gender: men in a particular position could as easily make less than women with higher grades and steps in the same position. In fact, one of the individual plaintiffs here makes over $3,000 more than the other two individual plaintiffs, although all are females holding the same position.

The significant $10,000 differential in this case results from the fact that Doe filled a specific need that Southern State had back in 2003. Corrections could have filled this need on a temporary basis or given Doe a bonus to compensate him for his extra work, but the law did not require this and it is not for the Court to "fix" that decision more than a decade later. It is also not for the court to override portions of the collective bargaining agreement governing salaries. It may be that the Agreement could be revised to better address wage disparities among co-workers, but the court has no authority to do that in the context of this case.

---

[19] In addition, counsel for Plaintiffs conceded at oral argument that there is nothing to suggest that the "equity" referred to in the HIR policy was intended to address gender equality specifically.

<u>Order</u>

Assuring that women are treated equally in the workplace is not a simple task. Reaching pay equity is a challenge because of historical workplace inequity between the genders, as well as many other factors that discourage women from seeking certain positions and from negotiating higher pay. However, inequity in salaries is not per se discrimination: an employer is permitted under the Equal Pay Act to show that the reasons for the inequity are not gender-based. Here, the employer has done so. The evidence before the court does not permit a finding that the State in this case has violated the law. Plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

Dated at Burlington this 21st day of October, 2014.

_____
Helen M. Toor
Superior Court Judge